[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————————————

No. 12-14271

————————————————————————

D.C. Docket No. 6:11-cv-00831-GAP-KRS

FLORIDA VIRTUALSCHOOL,
a Florida Educational Institution,

Plaintiff-Appellant,

versus

K12, INC.,
a Delaware Corporation,
K12 FLORIDA, LLC,
a Florida Limited Liability Company,

Defendants-Appellees.

————————————————————————

Appeal from the United States District Court
for the Middle District of Florida

————————————————————————

(October 10, 2013)

Before DUBINA, JORDAN, and BALDOCK,[*] Circuit Judges.

JORDAN, Circuit Judge:

---

[*] Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit, sitting by designation.

Given the increasing popularity of online education and its growing use in the K-12 segment,[1] it is probably not a surprise to see monetary disputes between competitors in that industry end up in court. In this case, Florida VirtualSchool, a Florida state agency, appeals the district court's dismissal of its trademark infringement suit against K12, Inc. and K12 Florida, LLC (collectively "K12") for lack of standing. The issue before us is whether Florida VirtualSchool is authorized under Florida law to assert these trademark infringement claims, or whether that authority lies exclusively with Florida's Department of State. After review, and with the benefit of oral argument, we find that the relevant Florida law is ambiguous on this issue, and that we would greatly benefit from the guidance of the Florida Supreme Court.

**I**

Florida VirtualSchool was "established for the development and delivery of online and distance learning education." FLA. STAT. § 1002.37. By January of 2002, it was using the marks "FLVS" and "FLORIDA VIRTUALSCHOOL" in connection with its online education program, marks which it registered with the United States Patent and Trademark Office. In 2003, the State of Florida began a pilot program that allowed private companies to compete with Florida

---

[1] *See, e.g.*, Matthew Lynch, *K-12 Online Learning as a Life Skill*, THE HUFFINGTON POST BLOG (Sept. 26, 2013, 3:29 PM), http://www.huffingtonpost.com/matthew-lynch-edd/k-12-online-learning-as-a_b_3997854.html.

2

VirtualSchool and serve a limited number of students. K12—a national online education provider—was part of that program.

Florida VirtualSchool alleges that K12 infringed on its trademarks by causing actual market confusion in a variety of ways. First, K12 adopted the name "Florida Virtual Academy" and "FLVA" for its services in Florida. And, after the pilot program became permanent, it also began using the name "Florida Virtual Program" and "FLVP." Second, K12 has paid for a sponsored listing on http://www.flvs.com—a website owned by Name Administration, Inc.—to divert customers away from Florida VirtualSchool's website (http://www.flvs.net). Third, the website for K12's Florida Virtual Program is similar in both design and color scheme to the website for Florida VirtualSchool.

On May 18, 2011, Florida VirtualSchool sued K12 for trademark infringement under both the Lanham Act, *see* 15 U.S.C. § 1051 et seq., and Florida common law.[2] K12 filed a motion for summary judgment or, alternatively, to dismiss for lack of standing. The district court concluded as a matter of law that Florida VirtualSchool was not the legal owner of the trademarks in question under Florida law and did not have standing to bring suit under the Lanham Act. It therefore dismissed the complaint without prejudice. *See Florida VirtualSchool v.*

---

[2] Florida VirtualSchool also brought a claim of cyber-piracy against Name Administration, Inc., but voluntarily dismissed that claim.

*K12, Inc.*, No. 6:11-cv-831-Orl-31KRS, 2012 WL 2920998 (M.D. Fla. July 16, 2012). This appeal followed.

## II

We review *de novo* a district court's dismissal for lack of standing. *See Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys.*, 524 F.3d 1229, 1232 (11th Cir. 2008). We also exercise *de novo* review over the district court's interpretation of state law. *See Venn v. St. Paul Fire and Marine Ins. Co.*, 99 F.3d 1058, 1066 (11th Cir. 1996).

"To bring a trademark infringement claim under the Lanham Act, a plaintiff must hold a valid trademark." *Natural Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1329 (11th Cir. 2008). In a case like this one, the trademark's owner or successor in interest has standing to sue. *See* 15 U.S.C. § 1114 (stating that remedies are available to the registrant); 11 U.S.C. § 1127 (defining trademark's "registrant" to include "the legal representatives, predecessors, successors and assigns of such . . . registrant"). *See also Gaia Technologies, Inc. v. Reconversion Technologies, Inc.*, 93 F.3d 774, 777 (Fed. Cir. 1996) (holding that a party lacks standing to assert a trademark infringement claim "[a]bsent ownership of the intellectual property"); *Quabuag Rubber Co. v. Fabiano Shoe Co., Inc.*, 567 F.2d 154, 159 (1st Cir. 1977) (holding that an exclusive licensee had standing to

sue under the Lanham Act, but a non-exclusive licensee did not); *DEP Corp. v. Interstate Cigar Co., Inc.*, 622 F.2d 621, 623-24 (2d Cir. 1980) (same). And, although federal law provides a cause of action for trademark infringement, the matter of who owns a trademark is ordinarily determined by state law. *See Country Mutual Ins. Co. v. Am. Farm Bureau Federation*, 876 F.2d 599, 601 (7th Cir. 1989); *Gibraltar, P.R., Inc. v. Otoki Group, Inc.*, 104 F.3d 616, 619 (4th Cir. 1997).

Under Florida law, "[a]n agency's powers are limited to those conferred by the Legislature." *Schindelar v. Fla. Unemployment Appeals Comm'n*, 31 So. 3d 903, 905 (Fla. 1st DCA 2010). *Cf.* FLA. STAT. § 120.52(8) ("An agency may adopt only rules that implement or interpret the specific powers and duties granted by the enabling statute."). With respect to trademarks, Florida VirtualSchool is authorized by statute to "acquire, enjoy, use, and dispose of . . . trademarks and any licenses and other rights or interests thereunder or therein." FLA. STAT. § 1002.37(2)(c). But "[o]wnership of all such . . . trademarks, licenses, and rights or interest thereunder or therein shall vest *in the state* with [Florida VirtualSchool] having full right of use and full right to retain the revenues derived therefrom." *Id*. (emphasis added).

A different Florida statute generally provides that the Department of State is vested with "legal title and every right, interest, claim or demand of any kind in and to any patent, trademark or copyright, or application for the same, now owned

5

or held, or as may hereafter be acquired, owned and held by the state, or any of its boards, commissions or agencies." FLA. STAT. § 286.021. The Department of State is further authorized to "perform any and all things necessary to secure letters patent, copyright and trademark on any invention or otherwise, and to enforce the rights of the state therein . . . including legal actions, to protect the same against improper or unlawful use or infringement . . . ." FLA. STAT. § 286.031. The district court concluded that, under § 286.021, only the Department of State has standing to sue for infringement of Florida VirtualSchool's trademarks.

We read the specific statute governing Florida VirtualSchool, § 1002.37(2)(c), and the general statute concerning the Department of State, § 286.021, to be in tension with one another. And we cannot turn to any decision from the Florida courts for guidance as to how these statutes ought to be reconciled because they have never been so much as cited in a state court decision. This case, in our view, presents a state law issue of first impression with reasonable arguments on both sides.

On the one hand, Florida VirtualSchool's right to acquire, enjoy, use, license, and dispose of trademarks, as set forth in § 1002.37(2)(c), would appear to fully encompass the rights attendant to ownership, including the right to protect those ownership interests. First, Florida VirtualSchool's right to acquire trademarks connotes ownership because only the owner can register a trademark

6

under federal law. *See* 15 U.S.C. § 1051. Second, the right to enjoy and use trademarks would be largely ethereal if Florida VirtualSchool could not protect against infringement. Third, Florida VirtualSchool's right to license its trademarks and retain the revenues derived therefrom conflicts to some degree with both FLA. STAT. § 286.021, which forbids any person from using state-owned trademarks without the written consent of the Department of State, and FLA. STAT. § 286.031, which authorizes the Department to license state-owned trademarks for consideration to be determined by the Department. Fourth, the right to dispose of property is generally reserved for the owner of such property. *See, e.g., Jacksonville Bulls Football, Ltd. v. Blatt*, 535 So. 2d 626, 629 (Fla. 3rd DCA 1988) ("An owner of property has the right to dispose of it as he or she sees fit . . .").

On the other hand, the rights of the Department of State with respect to trademarks (and other intellectual property) do not seem to contemplate a co-equal partner. First, § 286.021 vests in the Department of State all "legal title and every right [and] interest" in trademarks. Second, Florida VirtualSchool's enabling statute does not specifically provide for a general right to sue or, more specifically, the authority to take necessary legal action to protect against improper or unlawful use or infringement of trademarks. The Department of State—not Florida VirtualSchool—has been given such express authority by § 286.031. Third, other provisions of Florida law pertaining to the trademark rights of other state agencies

7

have expressly given those agencies more explicit authority to take necessary legal action. *See, e.g.,* FLA. STAT. § 601.101 (Dep't of Citrus); FLA. STAT. § 334.049(1)-(2) (Dep't of Transportation); FLA. STAT. § 1004.23 (State universities); FLA. STAT. § 24.105(10) (Dep't of the Lottery). Fourth, some opinions by Florida's Attorney General—which are "entitled to careful consideration and should be regarded as highly persuasive," *State v. Family Bank of Hallandale*, 623 So. 2d 474, 478 (Fla. 1993)—lend some support to K12's reading of §§ 286.021 and 286.031.  *See* Op. Att'y Gen. Fla. 00-13 (2000); Op. Att'y Gen. Fla. 71-298 (1971); Op. Att'y Gen. Fla. 69-81 (1969).[3]

## III

We recognize that "when we write to a state law issue, we write in faint and disappearing ink." *McMahan v. Toto*, 311 F.3d 1077, 1079 (11th Cir. 2002) (internal quotation marks omitted). For that reason, we have previously said that "[w]hen substantial doubt exists about the answer to a material state law question upon which the case turns, [we] should certify that question to the state supreme court in order to avoid making unnecessary state law guesses and to offer the state court the opportunity to explicate state law." *Forgione v. Dennis Pirtle Agency, Inc.,* 93 F.3d 758, 761 (11th Cir. 1996).

---

[3] Unfortunately, we do not have the views of the Department of State on the issue before us.  Although it was granted leave to do so, the Department chose not to file an *amicus curiae* brief in this appeal.

The issue in this case is an important one, as it affects the respective rights of various Florida agencies and departments with respect to intellectual property. Accordingly, we certify the following question to the Florida Supreme Court for determination under Florida law:

> Does Florida VirtualSchool's statutory authority to "acquire, enjoy, use, and dispose of . . . trademarks and any licenses and other rights or interests thereunder or therein" necessarily include the authority to bring suit to protect those trademarks, or is that authority vested only in the Department of State?

Our statement of the question is not meant to restrict, in any way, the Florida Supreme Court's response to the question or its analysis of the issue raised. To assist the Florida Supreme Court in considering this certified question, the record in this case and the parties' briefs shall accompany this certification.

**QUESTION CERTIFIED.**