[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-14271

_____

D.C. Docket No. 6:11-cv-00831-GAP-KRS

FLORIDA VIRTUALSCHOOL,
a Florida Educational Institution,

Plaintiff-Appellant,

versus

K12, INC.,
a Delaware Corporation,
K12 FLORIDA, LLC,
a Florida Limited Liability Company,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 17, 2014)

Before JORDAN, DUBINA, and BALDOCK,[*] Circuit Judges.

JORDAN, Circuit Judge:

_____

[*] Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit, sitting by designation.

On October 10, 2013, we certified the following question to the Supreme Court of Florida:

> Does Florida Virtual School's statutory authority to "acquire, enjoy, use, and dispose of . . . trademarks and any licenses and other rights or interests thereunder or therein" necessarily include the authority to bring suit to protect those trademarks, or is that authority vested only in the Department of State?

*Florida VirtualSchool v. K12, Inc.*, 735 F.3d 1271, 1275 (11th Cir. 2013).  The Supreme Court of Florida rephrased the question as follows:

> Does the Florida Virtual School's statutory authority to "acquire, enjoy, use, and dispose of . . . trademarks and any licenses and other rights or interests thereunder or therein," and the designation of its board of trustees as a "body corporate with all the powers of a body corporate and such authority as is needed for the proper operation and improvement of the Florida Virtual School," necessarily include the authority to file an action to protect those trademarks?

*The Florida Virtual School, etc. v. K12, Inc. et al.*, No. SC13-1934, --- So. 3d ---, 2014 WL 4638694, *1 (Fla. Sept. 18, 2014).  It then answered this question in the affirmative.  *Id.*[1]

Given the Supreme Court of Florida's ruling, Florida Virtual School has the authority, and the standing, to file an action to protect its trademarks.  We therefore reverse the district court's dismissal of Florida Virtual School's trademark

---

[1] The Supreme Court of Florida's opinion is attached as an appendix.

2

infringement suit against K12, Inc. and K12 Florida, LLC, and remand for further proceedings.[2]

We thank the Supreme Court of Florida for its assistance with this case.

**REVERSED AND REMANDED.**

---

[2] We acknowledge K12's argument that the district court's dismissal of Count One of the complaint should be affirmed on an alternative ground, namely that the federal service mark registrations sought to be enforced in Count One are void. The district court, however, found it unnecessary to address this issue when it dismissed Florida Virtual School's suit for lack of standing. We believe the better course is to allow the district court to address this issue in the first instance, and we therefore decline to address K12's argument at this time.

# Supreme Court of Florida

No. SC13-1934

**THE FLORIDA VIRTUAL SCHOOL, etc.,**
Appellant,

vs.

**K12, INC., et al.,**
Appellees.

[September 18, 2014]

LEWIS, J.

This case is before the Court to answer a question under Florida law certified by the United States Court of Appeals for the Eleventh Circuit that is essential in determining an action pending in that court and for which there appears to be no controlling Florida precedent. We have jurisdiction. Art. V, § 3(b)(6), Fla. Const. In Florida VirtualSchool v. K12, Inc., 735 F.3d 1271, 1275 (11th Cir. 2013),[1] the Eleventh Circuit certified the following question:

---

1. The appellant is referenced in the federal proceedings as both Florida VirtualSchool and Florida Virtual School. For purposes of this decision, we refer to appellant as the Florida Virtual School. See § 1002.37, Fla. Stat. (2013).

> Does Florida VirtualSchool's statutory authority to "acquire, enjoy, use, and dispose of . . . trademarks and any licenses and other rights or interests thereunder or therein" necessarily include the authority to bring suit to protect those trademarks, or is that authority vested only in the Department of State?

Because the statute quoted by the Eleventh Circuit includes additional language that is relevant to our resolution of the issue presented, and that federal court specifically stated that our analysis is not limited, we rephrase the certified question as follows:

> Does the Florida Virtual School's statutory authority to "acquire, enjoy, use, and dispose of . . . trademarks and any licenses and other rights or interests thereunder or therein," and the designation of its board of trustees as a "body corporate with all the powers of a body corporate and such authority as is needed for the proper operation and improvement of the Florida Virtual School," necessarily include the authority to file an action to protect those trademarks?

For the reasons expressed below, we answer the question in the affirmative.

## FACTS AND BACKGROUND INFORMATION

In the order dismissing the action filed by the Florida Virtual School against K12, Inc., and K12, Florida, LLC (collectively "K12"), the United States District Court for the Middle District of Florida provided a brief history of the school in question:

> In 1997, Plaintiff [the Florida Virtual School] was founded under the name "Florida On-Line High School." Plaintiff is an educational institution whose mission is to provide online courses to students throughout the United States and foreign countries. In June 2000, Plaintiff became an agency of the State of Florida pursuant to Section 228.082 of the Florida Statutes. In 2002, Section 228.082 of the

- 2 -

Florida Statutes was amended and renumbered as Section 1002.37 of the Florida Statutes. At this time, Plaintiff's name was changed to "Florida VirtualSchool."

Fla. VirtualSchool v. K12, Inc., No. 6:11–cv–831–Orl–31KRS, 2012 WL 2920998,

at *1 (M.D. Fla. July 16, 2012).

The opinion of the Eleventh Circuit provides the relevant facts of the action

filed by the Florida Virtual School against K12:

> Florida VirtualSchool was "established for the development and delivery of online and distance learning education." Fla. Stat. § 1002.37. By January of 2002, it was using the marks "FLVS" and "FLORIDA VIRTUALSCHOOL" in connection with its online education program, marks which it registered with the United States Patent and Trademark Office. In 2003, the State of Florida began a pilot program that allowed private companies to compete with Florida VirtualSchool and serve a limited number of students. K12—a national online education provider—was part of that program.
>
> Florida VirtualSchool alleges that K12 infringed on its trademarks by causing actual market confusion in a variety of ways. First, K12 adopted the name "Florida Virtual Academy" and "FLVA" for its services in Florida. And, after the pilot program became permanent, it also began using the name "Florida Virtual Program" and "FLVP." Second, K12 has paid for a sponsored listing on http://www.flvs.com—a website owned by Name Administration, Inc.—to divert customers away from Florida VirtualSchool's website (http://www.flvs.net). Third, the website for K12's Florida Virtual Program is similar in both design and color scheme to the website for Florida VirtualSchool.
>
> On May 18, 2011, Florida VirtualSchool sued K12 for trademark infringement under both the Lanham Act, see 15 U.S.C. § 1051 et seq., and Florida common law. [n.2] K12 filed a motion for summary judgment or, alternatively, to dismiss for lack of standing.
>
>> [N.2.] Florida VirtualSchool also brought a claim of cyber-piracy against Name Administration, Inc., but voluntarily dismissed that claim.

- 3 -

Fla. VirtualSchool, 735 F.3d at 1272.

K12 asserted that the Florida Virtual School had no standing because the authority to file an action with regard to the trademarks was vested exclusively in the Florida Department of State (DOS). In support of this contention, K12 relied upon language in the Florida Virtual School's enabling statute which provides that all school trademarks are owned by the State. § 1002.37(2)(c), Fla. Stat. (2013). K12 noted that section 286.021, Florida Statutes (2013), grants to, and vests in, the DOS "[t]he legal title and every right, interest, claim or demand of any kind in and to any patent, trademark or copyright" that is owned or held by the State. K12 also referenced section 286.031, Florida Statutes (2013), which authorizes the DOS to "secure letters patent, copyright and trademark on any invention or otherwise, and . . . to take any and all action necessary, including legal actions, to protect the same against improper or unlawful use or infringement." On July 16, 2012, the district court held that the Florida Virtual School lacked standing to file the present action and dismissed it without prejudice. Fla. VirtualSchool, 2012 WL 2920998, at *4.

On appeal, the Eleventh Circuit concluded that this matter involves an issue of first impression, and that the parties had presented reasonable arguments with regard to whether the Florida Virtual School possessed standing to file an action to protect the trademarks. Fla. VirtualSchool, 735 F.3d at 1273-74. The Eleventh Circuit concluded that this case "affects the respective rights of various Florida

- 4 -

agencies and departments with respect to intellectual property" and certified a question for determination under Florida law. Id. at 1275.

## ANALYSIS

### Relevant Statutes and Standard of Review

An agency created by statute does not possess any inherent powers. Rather, the agency is limited to the powers that have been granted, either expressly or by necessary implication, by the statute that created the agency. St. Regis Paper Co. v. State, 237 So. 2d 797, 799 (Fla. 1st DCA 1970). The statutes that pertain to the issue here provide, in relevant part:

> **286.021. Department of State to hold title to patents, trademarks, copyrights, etc.**
>
> The legal title and every right, interest, claim or demand of any kind in and to any patent, trademark or copyright, or application for the same, now owned or held, or as may hereafter be acquired, owned and held by the state, or any of its boards, commissions or agencies, is hereby granted to and vested in the Department of State for the use and benefit of the state; and no person, firm or corporation shall be entitled to use the same without the written consent of said Department of State.

§ 286.021, Fla. Stat. (2013).

> **286.031. Authority of Department of State in connection with patents, trademarks, copyrights, etc.**
>
> The Department of State is authorized to do and perform any and all things necessary to secure letters patent, copyright and trademark on any invention or otherwise, and to enforce the rights of the state therein; to license, lease, assign, or otherwise give written consent to any person, firm or corporation for the manufacture or use thereof, on a royalty basis, or for such other consideration as said

- 5 -

department shall deem proper; to take any and all action necessary, including legal actions, to protect the same against improper or unlawful use or infringement, and to enforce the collection of any sums due the state and said department for the manufacture or use thereof by any other party; to sell any of the same and to execute any and all instruments on behalf of the state necessary to consummate any such sale; and to do any and all other acts necessary and proper for the execution of powers and duties herein conferred upon said department for the benefit of the state.

§ 286.031, Fla. Stat. (2013).

## 1002.37.  The Florida Virtual School

(2)  The Florida Virtual School shall be governed by a board of trustees comprised of seven members appointed by the Governor to 4-year staggered terms.  The board of trustees shall be a public agency entitled to sovereign immunity pursuant to s. 768.28, and board members shall be public officers who shall bear fiduciary responsibility for the Florida Virtual School.  The board of trustees shall have the following powers and duties:

. . . .

(b)  The board of trustees shall be responsible for the Florida Virtual School's development of a state-of-the-art technology-based education delivery system that is cost-effective, educationally sound, marketable, and capable of sustaining a self-sufficient delivery system through the Florida Education Finance Program.

(c)  The board of trustees shall aggressively seek avenues to generate revenue to support its future endeavors, and shall enter into agreements with distance learning providers. The board of trustees may acquire, enjoy, use, and dispose of patents, copyrights, and trademarks and any licenses and other rights or interests thereunder or therein.  Ownership of all such patents, copyrights, trademarks, licenses, and rights or interests thereunder or therein shall vest in the state, with the board of trustees having full right of use and full right to retain the revenues derived therefrom . . . .

. . . .

. . . . The board of trustees shall be a body corporate with all the powers of a body corporate and such authority as is needed for the proper operation and improvement of the Florida Virtual School.

- 6 -

§ 1002.37(2), Fla. Stat. (2013).

Each statute addresses trademarks that are owned by the State. However, that does not end the analysis. The enabling statute for the Florida Virtual School and the statutes under which the DOS operates present a tension with regard to the scope of authority granted to the school. For example, sections 286.021 and 286.031 provide that the DOS is authorized to do and perform any and all things necessary to generally secure letters patent, copyright and trademark on any invention or otherwise, and trademarks generally owned by the State may not be used by a corporation without the written consent of the DOS. However, section 1002.37 specifically establishes a board of trustees to govern the Florida Virtual School, designates the board as "a body corporate," and further specifically authorizes the board to acquire, enjoy, and use trademarks "and any licenses and other rights or interests thereunder or therein." § 1002.37(2), Fla. Stat. Nothing in section 1002.37 requires the Florida Virtual School to obtain written consent from the DOS before enjoying or using a school trademark or any rights or interests therein.

Additionally, section 286.031 provides that the DOS is generally authorized to sell trademarks. However, section 1002.37 provides that the Florida Virtual School board of trustees may "dispose of" trademarks. § 1002.37(2)(c), Fla. Stat. Section 286.031 provides that the DOS is entitled to "license, lease, assign, or

- 7 -

otherwise give written consent" to entities to use the trademarks "on a royalty basis, or for such other consideration as said department shall deem proper," and also to "enforce the collection of any sums due . . . for the manufacture or use thereof by any other party." § 286.031, Fla. Stat.  Despite this general language, section 1002.37 provides that the Florida Virtual School board of trustees "shall enter into agreements with distance learning providers" and is required to "aggressively seek avenues to generate revenue to support its future endeavors." § 1002.37(2)(c), Fla. Stat.  This subsection also specifically provides that the board has the "full right of use and full right to retain the revenues derived" from the trademarks.  Id.

The overlapping language with regard to the respective rights and duties of the Florida Virtual School and the DOS creates a need to interpret the extent of the relationship and powers involved.  Specifically at issue is the field of operation for the school with respect to the trademarks it acquires on behalf of the State.  Accordingly, it is necessary to apply principles of statutory construction to determine whether the Florida Statutes provide the Florida Virtual School a basis for the authority to file actions for infringement of the school's trademarks.  See Polite v. State, 973 So. 2d 1107, 1111 (Fla. 2007) ("As with all cases of statutory construction, it is the Court's purpose to effectuate legislative intent.").

**Principles of Statutory Construction**

- 8 -

This Court has repeatedly stated that legislative intent is the polestar that guides a statutory construction analysis. See, e.g., Capone v. Philip Morris USA, Inc., 116 So. 3d 363, 376 (Fla. 2013) (quoting Bautista v. State, 863 So. 2d 1180, 1185 (Fla. 2003)). Further:

> To discern legislative intent, a court must look first and foremost at the actual language used in the statute. Moreover, a "statute should be interpreted to give effect to every clause in it, and to accord meaning and harmony to all of its parts." Jones v. ETS of New Orleans, Inc., 793 So. 2d 912, 914-15 (Fla. 2001) (quoting Acosta v. Richter, 671 So. 2d 149, 153-54 (Fla. 1996)).

Larimore v. State, 2 So. 3d 101, 106 (Fla. 2008) (citation omitted). When reconciling statutes that may appear to conflict, the rules of statutory construction provide that a specific statute will control over a general statute, see State v. J.M., 824 So. 2d 105, 112 (Fla. 2002), and a more recently enacted statute will control over older statutes. See Palm Bch. Cnty. Canvassing Bd. v. Harris, 772 So. 2d 1273, 1287 (Fla. 2000); see also ConArt, Inc. v. Hellmuth, Obata + Kassabaum, Inc., 504 F.3d 1208, 1210 (11th Cir. 2007). With regard to the latter rule, this Court has explained "[t]he more recently enacted provision may be viewed as the clearest and most recent expression of legislative intent." Harris, 772 So. 2d at 1287.

### The Plain Language of Section 1002.37

The plain language of section 1002.37(2) provides that the Florida Virtual School's board of trustees "shall be a body corporate with all the powers of a body

corporate <u>and</u> such authority as is needed for the proper operation and improvement of the Florida Virtual School." (Emphasis supplied.) The designation of the board as a body corporate is without qualification or limitation. While the Florida Virtual School's enabling statute does not define the term "body corporate," Black's Law Dictionary equates a "body corporate" with a corporation. <u>Black's Law Dictionary</u> 198 (9th ed. 2009). Further, the Florida Legislature in the K-20 Education Code of the Florida Statutes has equated a "body corporate" with a corporation. <u>See</u> § 1001.72(1), Fla. Stat. (2013) (titled "University boards of trustees; <u>boards to constitute a corporation</u>" and providing that "[e]ach board of trustees <u>shall be a public body corporate</u> . . . with all the powers of a body corporate." (emphasis supplied)).

The authority to file legal actions is the first enumerated power granted to corporations by the Florida Statutes. <u>See</u> § 607.0302, Fla. Stat. (2013) ("Unless its articles of incorporation provide otherwise, every corporation . . . has the same powers as an individual to do all things necessary or convenient to carry out its business and affairs, including without limitation power: (1) To sue and be sued, complain, and defend in its corporate name."). This power is also granted to non-profit corporations. <u>See</u> § 617.0302, Fla. Stat. (2013) ("Every corporation not for profit organized under this chapter, unless otherwise provided in its articles of incorporation or bylaws, shall have power to: . . . (2) Sue and be sued and appear

- 10 -

and defend in all actions and proceedings in its corporate name to the same extent as a natural person.").

Further, a number of statutes that grant an entity all the powers of a body corporate without limitation also provide an illustrative list of powers that the grant entails, and the ability to file legal actions is routinely included in that list. See, e.g., § 215.56005(2)(c), Fla. Stat. (2013) (the Tobacco Settlement Financing Corporation "shall have all the powers of a corporate body under the laws of this state, including, but not limited to, the powers of corporations under chapter 617, to the extent not inconsistent with or restricted by the provisions of this section, including, but not limited to, the power to: . . . 2. Sue and be sued."); § 374.983(1), Fla. Stat. (2013) (the governing body of the Florida Inland Navigation District "shall have all powers of a body corporate, including the power to sue and be sued as a corporation, in its name, and in any court having jurisdiction."); § 388.161(2), Fla. Stat. (2013) (the governing body of a mosquito control district "shall have all the powers of a body corporate, including the power to sue and be sued as a corporation in said name in any court."); § 1001.63, Fla. Stat. (2013) (the board of trustees of a Florida College System institution "is constituted a body corporate . . . with all the powers and duties of a body corporate, including the power . . . to sue or be sued.").

Although section 1002.37 does not attempt to include an illustrative list, we conclude that the absence of such a list does not deprive the Florida Virtual School of the ability to initiate a legal action. The board of trustees constitutes a corporation by virtue of the body corporate language utilized in the enabling statute. As previously discussed, a basic power of a corporation under Florida law is to file legal actions. See generally First Nat. Bank of Gainesville v. Bd. of Pub. Instruction for Lafayette Cnty., 111 So. 521, 524 (Fla. 1927) ("The capacity of suit is one of the essential and ordinary incidents to a corporation."); see also §§ 607.0302(1), 617.0302(2), Fla. Stat. Thus, we conclude that the "all the powers of a body corporate" language in section 1002.37(2) authorizes the school to initiate litigation. Further, because this grant of power is without limitation, we hold that the Florida Virtual School is authorized to file legal actions to protect the trademarks that it acquires on behalf of the State.

Moreover, the enabling statute clearly grants the board of trustees "such authority as is needed for the proper operation and improvement of the Florida Virtual School." § 1002.37(2), Fla. Stat. The school, through its board of trustees, clearly and expressly has the authority to acquire, use, and enjoy trademarks, see id. at (2)(c), and the protection of those trademarks from infringement or improper use is necessary to facilitate the operation and continued improvement of the school. If third parties could wrongfully appropriate the Florida Virtual School

- 12 -

trademarks without repercussions, the school would lose customers, contracts, and revenue, and its operation would be significantly compromised. Instead, the broad and unqualified language in section 1002.37(2) supports our conclusion that the Legislature intended to give the Florida Virtual School the authority to file legal actions to protect school trademarks against infringement. To interpret the "body corporate" and the "such authority" language in this manner both gives meaning to each clause in section 1002.37(2) and harmonizes the statute by ensuring that the Florida Virtual School has the ability to protect its operation and continue its improvement through enforcement of its trademark rights. See Larimore, 2 So. 3d at 106.

Furthermore, when viewed in the historical context, it is logical and consistent to conclude that the Legislature chose to grant broad powers to the school. When the Florida Virtual School was designated as a public agency in 2000 (under the name "Florida On-Line High School"), ch. 2000-224, § 1, Laws of Fla., the board of trustees was charged with the development and delivery of a relatively new form of education—online and distance learning. The enabling statute currently provides: "The board of trustees shall be responsible for the Florida Virtual School's development of a state-of-the-art technology-based education delivery system that is cost-effective, educationally sound, marketable, and capable of sustaining a self-sufficient delivery system through the Florida

- 13 -

Education Finance Program." § 1002.37(2)(b), Fla. Stat. (emphasis supplied). Thus, the Florida Legislature recognizes that the board of trustees for the school continues to be involved in the implementation of a cutting-edge, online educational program.

The Legislature reasonably could have concluded that the trustees would possess a level of expertise beyond that of the DOS with respect to the development of the technology for the Florida Virtual School. Thus, the board of trustees would be better suited to monitor the use of this State-owned intellectual property and safeguard it against infringement. Moreover, because section 1002.37 does not require the Florida Virtual School to notify the DOS whenever it secures a trademark, copyright, or patent (as it clearly has the right and power to do), it is uncertain as to how the DOS could continually monitor school intellectual property for possible infringement. The lack of a notification requirement reflects a determination by the Legislature that the Florida Virtual School would have a degree of independence from the DOS with respect to intellectual property acquired by the school.

Finally, although the enabling statute expressly and reasonably provides that the trademarks acquired by the Florida Virtual School are owned by the State, and section 286.021 provides that legal title to property owned by the State vests in the DOS, the trustees of the Florida Virtual School have the clear, express authority to

- 14 -

"acquire, enjoy, use, and dispose of patents, copyrights, and trademarks and any licenses and other rights or interests thereunder or therein." § 1002.37(2)(c), Fla. Stat. We conclude that where intellectual property rights have been granted to a State agency by statute, such as the Florida Virtual School, its ability to exercise those rights would be meaningless if the agency holding those rights could not also protect the intellectual property from infringement. Accordingly, we hold that the legislative grant of the rights in section 1002.37(2) to the trustees of the Florida Virtual School necessarily authorizes the school to file actions to protect those rights and the intellectual property acquired by the school.

### The Specific, Later-Enacted Statute

The other rules of statutory construction also support our conclusion that the Florida Virtual School possesses standing under its enabling statute to file a trademark infringement action. Section 286.031 generally governs trademarks that are held or owned by the State, and authorizes the DOS to protect those trademarks against "improper or unlawful use or infringement." § 286.031, Fla. Stat.; see also Op. Att'y Gen. Fla. 2000-13, at *2 (2000) ("[S]ections 286.021 and 286.031, Florida Statutes, vest general authority in the Department of State . . . to apply for, hold and enforce legal title to trademarks, patents, and copyrights on behalf of the State of Florida." (emphasis supplied)). However, section 1002.37 specifically authorizes the Florida Virtual School to acquire, use, enjoy, and dispose of the

- 15 -

trademarks it has acquired. The legislative grant to the board of trustees of "all the powers of a body corporate and such authority as is needed for the proper operation and improvement of the Florida Virtual School" necessarily incorporates the ability to protect the trademarks that the school has acquired on behalf of the State and continues to use and enjoy. § 1002.37(2), Fla. Stat. Therefore, section 1002.37 controls over the general DOS statutes and creates an exception to the general rule that only the DOS is authorized to protect State-owned trademarks against unlawful use or infringement. See J.M., 824 So. 2d at 112; see also Op. Att'y Gen. Fla. 2000-13, at *2 (2000) (noting that the Legislature has granted certain state agencies the authority to hold and enforce trademarks).

Further, the Florida Virtual School's enabling statute is more recent than the DOS statutes. The statute that designated the Florida Virtual School to be a public agency was enacted in 2000 (under the name "Florida On-Line High School"). See ch. 2000-224, § 1, Laws of Fla. The DOS statutes were enacted in 1943, see ch. 21959, §§ 1-2, Laws of Fla. (1943),[2] and have not been amended since 1979—

---

2. Although we refer to sections 286.021 and 286.031 as "the DOS statutes," the DOS was not named as the administering agency of these provisions until 1979. See ch. 79-65, §§ 15-16, Laws of Fla. Prior to the DOS assuming responsibility, these provisions were administered first by the Board of Commissioners of State Institutions, then the Department of General Services, and finally the Board of Trustees of the Internal Improvement Trust Fund. See ch. 21959, §§ 1-2, Laws of Fla. (1943); ch. 69-106, § 22, Laws of Fla.; ch. 70-440, § 2, Laws of Fla.

- 16 -

twenty-one years before the Florida Virtual School became a public agency. See ch. 79-65, §§ 15-16, Laws of Fla. At the time of the last amendment to the DOS statutes, the Internet would not be readily available to the public for at least a decade. See generally Prometheus Radio Project v. Fed. Commc'ns Comm'n, 373 F.3d 372, 448 (3d Cir. 2004) (noting that "[t]he first graphical interface for the Internet was introduced in 1989. In 1992 there were only 50 websites in the world. By 1994, there were as many as 3,000 web sites in use. By year-end 2000, there were more than 30 million web sites.").

Thus, the 1979 Florida Legislature likely could not have envisioned "virtual" public schools, or that a student could graduate from high school without attending classes in a brick-and-mortar structure. It is reasonable to conclude that the Legislature in 2000 intended to give this new concept agency as much autonomy as possible to succeed in what was a cutting-edge educational endeavor. Requiring the Florida Virtual School to seek assistance from a different State agency to protect its legal rights, as well as school intellectual property from third-party misappropriation and misuse, would be inconsistent with overall statutory language that grants the trustees the authority to ensure the "proper operation and improvement" of the school. § 1002.37(2), Fla. Stat. Thus, under the rules of statutory construction, we conclude that the more recent statute, which authorizes the Florida Virtual School to protect school trademarks, controls over the older

- 17 -

statutes, which only generally vest the authority to enforce State-owned trademarks with the DOS. See Harris, 772 So. 2d at 1287; ConArt, Inc., 504 F.3d at 1210.

## Application to Other Enabling Statutes

Our interpretation of section 1002.37 constitutes a rational construction that effectuates the broad grant of rights and powers to the Florida Virtual School by the Legislature. It is simply not logical for a State entity to have the authority to "acquire, enjoy, use, and dispose of patents, copyrights, and trademarks and any licenses and other rights or interests thereunder or therein," § 1002.37(2)(c), Fla. Stat., but then be powerless to protect that intellectual property from infringement. Accordingly, we hold that where this State entity has been specifically granted rights with regard to intellectual property as those listed in the enabling statute of the Florida Virtual School, that entity possesses the authority to enforce and protect its rights through legal action.

## CONCLUSION

Based on the foregoing, we answer the rephrased certified question in the affirmative. We hold that the Florida Virtual School's statutory authority to "acquire, enjoy, use, and dispose of . . . trademarks and any licenses and other rights or interests thereunder or therein," and the designation of its board of trustees as a "body corporate with all the powers of a body corporate and such authority as is needed for the proper operation and improvement of the Florida

- 18 -

Virtual School," necessarily includes the authority to file an action to protect those trademarks. We return this case to the Eleventh Circuit Court of Appeals.

It is so ordered.

LABARGA, C.J., and PARIENTE, QUINCE, CANADY, POLSTON, and PERRY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Certified Question of Law from the United States Court of Appeals for the Eleventh Circuit - Case No. 12-14271

Stephen Hart Luther and Ryan Thomas Santurri of Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A., Orlando, Florida, and Frank Charles Kruppenbacher, General Counsel, Florida Virtual School, Orlando, Florida,

for Appellant

Stephanie Leigh Carman of Hogan Lovells US LLP, Miami, Florida, and Steven P. Hollman and Catherine E. Stetson of Hogan Lovells US LLP, Washington, District of Columbia,

for Appellees