[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 18-13291

————————————————

D.C. Docket No. 2:18-cv-00240-SPC-CM

PEOPLES GAS SYSTEM,
a division of Tampa Electric Company, a Florida corporation,

Plaintiff - Appellant,

versus

POSEN CONSTRUCTION, INC.,
a Michigan corporation,

Defendant - Appellee.

————————————————

Appeal from the United States District Court
for the Middle District of Florida

————————————————

(August 1, 2019)

Before JORDAN, GRANT, and DUBINA, Circuit Judges.

DUBINA, Circuit Judge:

**CERTIFICATION FROM THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT**

**OF FLORIDA, PURSUANT TO FLA. R. APP. P. 9.150(a).   TO THE SUPREME COURT OF FLORIDA AND ITS HONORABLE JUSTICES:**

This appeal requires us to determine whether a Florida law regulating underground utility infrastructure recognizes a standalone cause of action for reimbursement of damages paid to third parties and/or a statutory right of indemnification.   The plaintiff, Peoples Gas System ("PGS"), sues the defendant construction company, Posen Construction, Inc. ("Posen"), for damages under the Florida Underground Facility Damage Prevention and Safety Act ("the Act"). Fla. Stat. § 556.101–106.   The Act permits utilities to recover damages when construction workers negligently damage utility lines.   In this case, however, PGS seeks indemnification from Posen, claiming that PGS has paid out damages to other plaintiffs in prior litigation for damages that Posen caused.   The Act does not expressly speak to the possibility of indemnification, and Florida courts have not directly addressed whether the Act creates a cause of action to recover damages such as these.   Therefore, we deem it important to certify the question of Florida substantive law presented in this case to the Supreme Court of Florida.

## I.  BACKGROUND

PGS is a Florida natural gas distributor that maintains underground pipelines, and Posen is a road construction company.   During one of Posen's road

2

construction projects near Ft. Myers, Florida, Posen learned that it would need to have PGS remove a section of gas pipeline ahead of Posen's work.   In October 2010, Posen submitted a request to obtain the location of PGS's pipeline.   The Act mandates specific procedures and notifications when, in a situation like this, a construction company requires the assistance of an underground utility company.

PGS alleges the request was unlawful because Posen's request failed to describe the excavation area with the specificity the Act requires.   In November 2010, Posen's superintendent, Greg Menuez ("Menuez"), directed his subordinate, Mark Santos ("Santos"), to dig and till the ground around the excavation area with heavy machinery.   Importantly, PGS alleges that Menuez knew that a gas pipeline in the area was not properly marked.   Santos ruptured the gas pipeline, caused a fire, and was severely injured. Unsurprisingly, years of litigation followed.

The litigation began in 2011 in Florida state court, when Santos sued PGS and Posen.   At some point between the 2011 commencement of the litigation and 2017, Santos dismissed Posen and settled with PGS.   Concurrent with the commencement of the Santos litigation, PGS also sued Posen in federal court, seeking damages for the repair costs under a negligence claim.   Posen counterclaimed, and the parties ultimately settled.   The present litigation commenced in January 2018, when PGS sued Posen under the Act, claiming either

3

damages or an alternative claim for indemnity for the money it paid Santos in the earlier settlement.

The Act creates a rebuttable presumption of negligence against the excavator if an excavator "performs an excavation or demolition that damages an underground facility of a member operator."   Fla. Stat. § 556.106(2)(a).   Under the Act, the excavator is liable "for the total sum of the losses to all parties involved as those costs are normally computed."   *Id.* at § 556.106(2)(b).   Posen moved to dismiss, claiming that PGS's damages do not qualify as a "loss" under the statute, and because the Act does not provide a statutory right to indemnification.   The district court agreed, and on June 26, 2018, it dismissed the complaint.   This appeal followed.

## II.  DISCUSSION

A.    *Does the Act provide a cause of action to recover damages paid to a*
       *third party?*

PGS first argues that the district court wrongfully dismissed the action because, in its two-count complaint, only the second count sought indemnity as an alternative claim, while the first count sought direct damages under the Act. Under PGS's theory, the first claim should have survived because the broad language of the Act provides that the negligent party, "if found liable, is liable for

4

the total sum of the losses to all parties involved as those costs are normally computed." Fla. Stat. § 556.106(2)(b). Under that reading, "all losses" is the covered category of liability, with no restrictions on types of losses. In addition, the only statutory limitations on these losses are found in the next sentence that sets caps on damages in dollar amounts, which does not speak to categories of losses. *Id.* Posen counters that, first, both claims turn on whether the Act permits indemnification, PGS's arguments notwithstanding, and second, that the Act is not designed to create a new cause of action for utilities that was not already found in Florida common law.

The parties both agree that there is sparse case law addressing the issue, much less binding precedent from the Florida Supreme Court. When we lack guidance from the Florida Supreme Court, we must adhere to the decisions of Florida's intermediate appellate courts "absent some persuasive indication that the state's highest court would decide the issue otherwise." *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1290 (11th Cir. 2001) (quoting *Ins. Co. of N. Am. v. Lexow*, 937 F.2d 569, 571 (11th Cir. 1991)). And as the district court observed, Florida's intermediate appellate courts are far from unified in their holdings interpreting the Act.

5

The district court, synthesizing applicable rules from sparse caselaw, found that none of the cases addressing the Act had permitted recovery for a cost as remote as this one, e.g., reimbursement for a settlement agreement between a utility and a third party arising from previous litigation.   In the district court's view, even the most generous precedent seemed limited to recovering costs relating to equipment damage or personal injury, which dovetailed with the codified legislative intent that the statute's purpose was more preventative than remedial in nature.   Fla. Stat. § 556.101.   PGS, however, responds that the statutory text – with nothing more – is perhaps equally susceptible to both possible readings.

Florida appellate courts and federal district courts have split on this question. *See, e.g., A & L Underground, Inc. v. City of Port Richey*, 732 So. 2d 480, 481 (Fla. Dist. Ct. App. 1999) (permitting recovery under the Act in favor of plaintiff-excavator for purely economic losses in the form of delay and repair costs after rupturing lines that defendant-municipality failed to mark); *But see Southland Constr., Inc. v. Greater Orlando Aviation*, 860 So. 2d 1031, 1038 (Fla. Dist. Ct. App. 2003) (expressing doubt about *A & L Underground*'s holding: "Even if the statute were intended to be as broad as the *A & L* court suggests, however, [the Act] still would not reach a remote and indirect insurance premium increase claim

6

or attorney's fees incurred to defend an OSHA claim."); *James D. Hinson Elec. Contracting Co., Inc. v. Bellsouth Telecomms., Inc.*, 642 F. Supp. 2d 1318, 1324 (M.D. Fla. 2009) (holding that Bellsouth's routine repair cost markup designed to cover indirect expenses associated with repairs was not covered under the Act; "Bellsouth's contention that the use of the term 'costs' somehow enlarges the scope of recovery available to member operators finds no support in the statute.").

Furthermore, the courts are not in uniform agreement as to whether the Act provides a standalone cause of action, or whether it simply clarifies the legal analysis in a negligence claim. *Compare A& L Underground, Inc.* at 481 (permitting a claim under the Act to proceed) and *Southland Construction* at 1037 ("[the Act] could be the source of a statutorily-created duty owed by [defendant to plaintiff] to correctly mark the location of its underground facilities and it could be the basis for Southland to recover its own damages if the facilities are not correctly marked.") *with James D. Hinson* at 1328 ( "[the Act] does not provide BellSouth with any additional remedies or damages other than those available at Florida common law."). *See also MCI Worldcom Network Servs., Inc. v. Mastec, Inc.*, 2003 WL 25729927 (S.D. Fla. 2003) (applying the standards provided in the Act to a routine common law negligence claim, ultimately finding disputes over the standard of care that precluded summary judgment); *James D. Hinson* at 1328 n. 7

7

("Of course, the Act does benefit BellSouth in this situation by creating a rebuttable presumption of negligence due to Hinson's apparent failure to follow the Act's notification procedures.").

In our view, Florida case law does not conclusively establish the purpose of the Act, including whether it creates a cause of action to recover damages paid to third parties or simply clarifies a common law negligence claim, and whether it authorizes damages incurred under circumstances as remote as these. Under this circuit's precedents, we should certify questions to the state supreme court when we have "substantial doubt" regarding the status of state law. *Fla. VirtualSchool [sic] v. K12, Inc.*, 735 F.3d 1271, 1274–75 (11th Cir. 2013) ("This case, in our view, presents a state law issue of first impression with reasonable arguments on both sides. . . . When substantial doubt exists about the answer to a material state law question upon which the case turns, [we] should certify the question to the state supreme court in order to avoid making unnecessary state law guesses and to offer the state court the opportunity to explicate state law.") (internal citations omitted).

B.  *Does the Act permit statutory indemnity?*

PGS's second argument on appeal is that the district court erroneously dismissed its second count because Florida law does not require a specific statutory

8

right to indemnification when the law otherwise allocates the losses to a tortfeasor. We seek clarification from the Florida Supreme Court because the caselaw is not conclusive and the statute is subject to multiple plausible interpretations, including the one PGS embraces, which caselaw still does not foreclose.

As an example of this implied right of statutory indemnification, PGS points to a different part of the Florida code that allocates liability for sheriffs' deputies and a federal district court case finding that the statutory language is broad enough to provide an indemnification obligation even when the statute does not use that word. *Martinez v. Miami-Dade Cty.*, 975 F. Supp. 2d 1293, 1297 (S.D. Fla. 2013) (finding that Fla. Stat. § 30.2905(2)(a), providing that any "public or private employer of a deputy sheriff shall be responsible for the acts or omissions of the deputy sheriff while performing services for that employer while off duty," is broad enough to create an indemnification obligation).

Likewise, PGS argues that the Act uses equally broad language to allocate liability to negligent excavators, even without using the word "indemnify" verbatim.    The district court summarily dismissed this argument, finding that the statute at issue in *Martinez* created an indirect right to statutory indemnification that the Act did not.    The *Martinez* court was seemingly bothered by the fact that the statutory language – "shall be responsible for the acts or omissions" – was not

9

susceptible to any alternative meaning.    The distinction between the instant case and *Martinez* should be obvious: The language of the Act is clearly ambiguous with multiple reasonable interpretations.    "Losses" may or may not include relatively remote indemnity payments to third parties in separate litigation proceedings.

PGS's next argument is that it is entitled to statutory indemnity regardless of whether common law indemnity is available.    PGS's primary case, this time coming from the Florida Supreme Court, addressed a corporate dispute between a corporation and its directors.    *Wendt v. La Costa Beach Resort Condo. Ass'n, Inc.*, 64 So. 3d 1228, 1230–31 (Fla. 2011).    There, a corporation sued its directors for breach of fiduciary duty.    The directors brought their own indemnification action pursuant to statute seeking expenses incurred in defending the first suit.    This case, however, has little bearing on ours: *Wendt* centered on a statute explicitly giving corporations power to indemnify, and the court ruled that, because the statute listed specific circumstances where indemnification was barred, none of which covered the situation at hand, the directors' suit should survive dismissal. Although PGS correctly cites *Wendt* for the proposition that statutes can give rise to indemnity obligations, we otherwise find little illumination from the statute in that case.

10

PGS next looks to two similar statutes in Arizona, dealing with underground and overhead utility lines, for the prospect of courts recognizing indemnification even absent the word "indemnification" in the statute.    This, too, is unpersuasive because the statutes cited impose broad liability on the violator, including "expenses and damages to third parties incurred by the owner of the facility as a result of the [violator's] contact."    Ariz. Rev. Stat. § 40-360.28(B) (1999) (amended 2007).    *See also* Ariz. Rev. Stat. § 40-360.44(B) ("including damages to third persons, incurred by the public utility as a result of the contact.").    An Idaho statute and attendant case law PGS cites also tracks the same statutory language and legal reasoning.    At first glance, this statutory scheme would seem most comparable to Florida's sheriff's deputy statute that the district judge in the present case recognized as providing indirect indemnification language.

However, PGS ultimately appeals to the plain language of the statute. Although Posen, and several court cases, have heavily relied on the fact that the statute does not explicitly give rise to an indemnity action, PGS again notes the relevant language of the statute – "[the negligent party] is liable for the *total sum of the losses to all parties* involved as those costs are normally computed."    Fla. Stat. § 556.106(b).    PGS contends that "all parties" means that a negligent excavator is liable for losses of anyone involved, and "total sum" includes any

11

conceivable loss.    The district court summarily dismissed this argument in its order, saying: "Notably, PGS has provided no authority to support its interpretation."    *Peoples Gas Sys. v. Posen Constr, Inc.*, 323 F. Supp. 3d 1362, 1366 (M.D. Fla. 2018).    While true, this particular set of circumstances leads us to believe that certification is the most prudent course of action in deciding a potentially novel application of Florida state law.

## III.    CERTIFIED QUESTION

We therefore certify the following question to the Supreme Court of Florida:

> Whether a member-operator has a cause of action under Fla. Stat. § 566.106(2)(a)–(c) to recover damages (or obtain indemnification) from an excavator for payments to a third party for personal injuries related to the excavator's alleged violation of the statute?

In certifying this question, we do not intend to restrict the issues considered by the Supreme Court of Florida.    *See Miller v. Scottsdale Ins. Co.*, 410 F.3d 678, 682 (11th Cir. 2005) ("Our phrasing of the certified question is merely suggestive and does not in any way restrict the scope of the inquiry by the Supreme Court of Florida.").    We note that the Supreme Court of Florida retains the discretion to restate the issue and to answer this question in the manner it chooses.    *See Nunez v. Geico General Ins. Co.*, 685 F.3d 1205, 1211 (11th Cir. 2012).

QUESTION CERTIFIED.