DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

THOMAS J. FOSTER, SR.,
an alleged incapacitated person,

Petitioner,

v.

CHRISTA RADULOVICH,
the emergency temporary guardian;
SUSAN FOSTER MELENDY;
THOMAS J. FOSTER, JR.; and
SHARON ROPER,

Respondents.


No. 2D20-2988

_____

September 29, 2021

Petition for Writ of Mandamus to the Circuit Court for Pinellas
County; Sherwood Coleman, Judge.

J. Ronald Denman, Latasha Lordes, and Victoria McLaughlin of
Bleakley Bavol Denman & Grace, Tampa, for Petitioner.

Brandon D. Bellew, Caitlein J. Jammo, Caitlin M. Powell of
Johnson, Pope, Bokor, Ruppel & Burns, LLP, Clearwater, for
Respondent, Thomas J. Foster, Jr.

Edward C. Castagna, Jr., of Castagna Law Firm, P.A., Clearwater, for Respondent, Susan Foster Melendy.

Thomas G. Tripp of Law Offices of Thomas G. Tripp, Pinellas Park, for Respondent, Christa Radulovich.

No appearance for Respondent, Sharon Roper.

ATKINSON, Judge.

Thomas J. Foster, Sr., petitions this court for a writ of mandamus to quash the trial court's order denying his motion to substitute attorney J. Ronald Denman as his counsel for the underlying guardianship proceeding.[1]  We treat Mr. Foster's petition as a petition for writ of certiorari and grant the writ.

The Department of Children and Families (DCF) filed a petition for appointment of a plenary guardian over the person and property of Mr. Foster, an alleged incapacitated person.  The trial court appointed counsel for Mr. Foster for the guardianship proceedings pursuant to section 744.331(2)b, Florida Statutes (2020).  Appointed counsel attended the hearing on DCF's petition, but Mr.

_____

[1] Respondent Susan Foster Melendy filed a response in support of Mr. Foster's petition, and Respondents Thomas J. Foster, Jr. and Christa Radulovich filed responses in opposition to the petition.  Foster, Jr., and Radulovich will be referred to collectively as Respondents throughout this opinion.

Foster was not present. The parties—including appointed counsel on behalf of Mr. Foster—stipulated to the appointment of Christa Radulovich (Temporary Guardian) as emergency temporary guardian over Mr. Foster's property. The emergency temporary guardianship letters delegated Mr. Foster's right to contract to the Temporary Guardian and were set to expire on September 20, 2020.

Thereafter, Attorney Denman filed a motion seeking appointment as Mr. Foster's counsel for the guardianship proceedings. DCF and Respondents opposed the motion, arguing that Mr. Foster could not hire Attorney Denman because the trial court had removed his right to contract through the emergency temporary guardianship. At a hearing on the motion, Mr. Foster explained to the trial court that he had met with Attorney Denman to discuss the guardianship proceedings and wanted Attorney Denman to serve as his attorney. The trial court denied the motion for appointment as counsel.

After the hearing but before the trial court denied the motion for appointment, Mr. Foster filed a motion to substitute Attorney Denman as his counsel for the guardianship proceedings. The trial court did not immediately rule on the motion. On September 21,

3

2020, the day after the emergency temporary guardianship letters expired, Attorney Denman filed a notice of appearance as Mr. Foster's attorney. The trial court then entered amended emergency temporary guardianship letters nunc pro tunc to September 20, 2020, denied the motion to substitute Attorney Denman as counsel, and struck his notice of appearance as a nullity. Attorney Denman, on behalf of Mr. Foster, challenges the order denying the motion to substitute counsel and striking his notice of appearance.

"To obtain a writ of certiorari, the 'petitioner must establish (1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the trial (3) that cannot be corrected on postjudgment appeal.' " *Brundage v. Evans*, 295 So. 3d 300, 303 (Fla. 2d DCA 2020) (quoting *Parkway Bank v. Fort Myers Armature Works, Inc.*, 658 So. 2d 646, 648 (Fla. 2d DCA 1995)). We have jurisdiction because an erroneous denial of a motion for substitution of counsel causes the kind of irreparable harm for which certiorari lies because the litigant is deprived of his or her choice of counsel for the entire proceeding and this deprivation cannot be remedied on appeal. *See Nader v. Fla. Dep't of Highway Safety & Motor Vehicles*, 87 So. 3d 712, 721 (Fla. 2012)

4

(explaining that a court must first examine the second and third prongs of the test for certiorari, often referred to as "irreparable harm," to determine whether it has jurisdiction to hear the petition); *cf. Holmes v. Burchett*, 766 So. 2d 387, 388–89 (Fla. 2d DCA 2000) (granting an alleged incapacitated person's petition for writ of certiorari to quash a trial court's denial of her motion for substitution of counsel).

After an interested person initiates guardianship proceedings by filing a petition to determine incapacity pursuant to sections 744.3201 and 744.331(1), the trial court is required to appoint an attorney for the alleged incapacitated person. § 744.331(2)b. Section 744.331(2)b provides that "[t]he alleged incapacitated person may substitute her or his own attorney for the attorney appointed by the court." An alleged incapacitated person is permitted to substitute counsel until the trial court determines incapacity by clear and convincing evidence. *See id.*; *cf. Holmes*, 766 So. 2d at 388–89 (holding that an alleged incapacitated person subject to an emergency temporary guardianship is presumed competent to contract and has a right to substitute counsel during guardianship proceedings until incapacity is established); *In re*

*Guardianship of Bockmuller*, 602 So. 2d 608, 609 (Fla. 2d DCA 1992) (holding that counsel for an incapacitated person must be contracted for by a guardian or appointed by the court); § 744.1012(3) ("[I]t is the purpose of this act to promote the public welfare by establishing a system that permits incapacitated persons to participate as fully as possible in all decisions affecting them . . . .").

After a petition to determine incapacity has been filed, but before a guardian has been appointed, the trial court may appoint an emergency temporary guardian for the person, property, or both, of an alleged incapacitated person.  § 744.3031(1).  While the trial court must make specific findings that there is an imminent danger to the health of the "alleged incapacitated person" or that the person's property is in danger of being wasted, the trial court is not required to determine that the person is incapacitated to appoint an emergency temporary guardianship.  § 744.3031(1).  Rights that are not specifically enumerated by the trial court in emergency temporary guardianship letters are retained by the alleged incapacitated person because the "powers and duties of the

emergency temporary guardian must be specifically enumerated by court order." *See* § 744.3031(1).

Respondents acknowledge that section 744.331(2)b permits Mr. Foster to substitute counsel to represent him in proceedings to determine his incapacity. However, they argue that Mr. Foster cannot *personally* exercise his statutory right to substitute counsel because the trial court removed his right to contract and delegated it to the temporary guardian through the emergency temporary guardianship. They argue that permitting an alleged incapacitated person whose right to contract has been removed pursuant to an emergency temporary guardianship to contract with an attorney would undermine the purpose of an emergency temporary guardianship—to protect the alleged incapacitated person and his or her property. *See* § 744.3031(1). Respondents conclude that if Mr. Foster wanted to substitute his court-appointed counsel, he should have expressed his wishes to his temporary guardian who would make the ultimate decision regarding whether to retain Attorney Denman, subject to the trial court's review for breach of fiduciary duty. *See Jacobsen v. Busko*, 262 So. 3d 238, 239 (Fla. 3d DCA 2018) ("Only the ward's plenary guardian . . . has the capacity

7

to enter into a contract with an attorney on behalf of the ward [after the removal of the ward's right to contract following a determination of incapacity]." (citing *In re Guardianship of Bockmuller*, 602 So. 2d at 609)).

Section 744.3031(1) gives the trial court the general authority to delegate certain rights of the alleged incapacitated person to a guardian who has the power to exercise those rights on the alleged incapacitated person's behalf. The statute confers "authority" on the temporary guardian but makes no express mention of the removal of a temporary ward's rights. *See* § 744.3031. Delegation of specifically delineated authority has the consequence of removing corresponding rights from the alleged incapacitated person subject to an emergency temporary guardianship to protect the person or property of the individual from danger that may result from the person's alleged incapacity if immediate action is not taken. *See* § 744.3031(1). Among those rights removed from the alleged incapacitated person might be the right to enter into contracts.

However, section 744.331(2)b specifically provides that an alleged incapacitated person has the right to substitute appointed counsel with counsel of his or her choice during proceedings to

8

determine incapacity; this right, by logic and practicality, must entail the right to enter into an agreement with the attorney of his choosing.[2] Thus, while section 744.3031(1) is broad enough to allow removal of the right to contract generally, section 744.331(2)b effectively prohibits the trial court from removing the alleged incapacitated person's right to contract with an attorney. In other words, because the statute confers on the alleged incapacitated person the right to contract with and substitute counsel, this constitutes an exception from the general authority of the trial court to remove the alleged incapacitated person's rights by conferring authority on an emergency temporary guardian. *See Fla. Virtual Sch. v. K12, Inc.*, 148 So. 3d 97, 102 (Fla. 2014) ("When reconciling statutes that may appear to conflict, the rules of statutory construction provide that a specific statute will control over a general statute . . . .").

---

[2] While an attorney-client relationship might be capable of formation absent an explicit and express agreement, such an arrangement typically occurs as a consequence of the attorney's representations made or services rendered to the client. Here, the issue is whether *the client* may be permitted to act on his own behalf to procure counsel—an endeavor that we presume for purposes of this opinion to most likely entail a contract, in some form or another, entered into with chosen counsel.

9

Respondents' reliance on *Jacobsen* and *In re Guardianship of Bockmuller* is misplaced. The wards in these cases were incapacitated persons subject to plenary guardianships. *Jacobsen*, 262 So. 3d at 239; *In re Guardianship of Bockmuller*, 602 So. 2d at 609. The right to substitute counsel in section 744.331(2)b only applies to *alleged* incapacitated persons, not to individuals whose incapacity has been determined by clear and convincing evidence. Unlike the wards in *Jacobsen* and *In re Guardianship of Bockmuller*, Mr. Foster was an alleged incapacitated person and, as such, had a statutory right to substitute counsel pursuant to section 744.331(2)b which the trial court is not authorized to remove pursuant to section 744.3031(1).

Respondents also suggest that *Holmes*, 766 So. 2d 387, one of the cases relied on by Mr. Foster, undermines Mr. Foster's position because the trial court had not removed the alleged incapacitated person's right to contract in that case. *See id.* at 388, 388 n.2. In *Holmes*, this court concluded that the trial court departed from the essential requirements of the law by prohibiting the alleged incapacitated person from substituting appointed counsel for the counsel of her choice because the trial court had not removed her

10

right to contract and, thus, she was presumed competent to contract. *Id.* at 388. However, our conclusion in this case is not undermined by our earlier decision in *Holmes* because we did not consider in that case whether the general authority given to the trial court pursuant to section 744.3031(1) allows the trial court to prevent an alleged incapacitated person from exercising his or her explicit right to contract with and substitute counsel pursuant to section 744.331(2)b. A person subject to an emergency temporary guardianship remains an *alleged* incapacitated person until such time as he is adjudicated incapacitated and is free to exercise all rights not otherwise delegated to a guardian pursuant to an emergency temporary guardianship, including the right to substitute counsel. *See* §§ 744.3031(1), .331(2)(b).[3]

---

[3] After this case was perfected, Mr. Foster's court-appointed attorney for the guardianship proceedings below filed documents with this court indicating that the trial court determined Mr. Foster to be incapacitated. However, this postperfection determination of incapacity does not prevent this court from concluding that the trial court departed from the essential requirements of the law by denying Mr. Foster's motion to substitute counsel to represent him during proceedings to determine incapacity at a time when his incapacity was merely alleged.

As an alleged incapacitated person, Mr. Foster had a right to substitute his court-appointed attorney with the attorney of his choice until the trial court determined his incapacity. *See* § 744.331(2)b. By denying his motion to substitute counsel, the trial court departed from the essential requirements of the law. We consider Mr. Foster's petition as one for a writ of certiorari, grant the writ, and quash the trial court's order denying his motion to substitute counsel.

Petition for writ of certiorari granted; order quashed.

LUCAS and ROTHSTEIN-YOUAKIM, JJ., Concur.

_____

Opinion subject to revision prior to official publication.