# Supreme Court of Florida

_____

No. SC19-1305
_____

**PEOPLES GAS SYSTEM, etc.,**
Petitioner,

vs.

**POSEN CONSTRUCTION, INC., etc.,**
Respondent.

June 10, 2021

MUÑIZ, J.

The U.S. Court of Appeals for the Eleventh Circuit has certified

to us a question about the Underground Facility Damage Prevention

and Safety Act, codified in chapter 556 of the Florida Statutes.[1]

The question asks:

> Whether a member-operator has a cause of action under
> Fla. Stat. § 556.106(2)(a)-(c) to recover damages (or
> obtain indemnification) from an excavator for payments
> to a third party for personal injuries related to the
> excavator's alleged violation of the statute?

---

1.  We have jurisdiction.  _See_ art. V, § 3(b)(6), Fla. Const.

*Peoples Gas System v. Posen Construction, Inc.,* 931 F 3d 1337, 1342 (11th Cir. 2019).

As we explain, we conclude that the Act creates a standalone cause of action; that the cause of action sounds in negligence; that liability under the Act is therefore subject to proof of proximate causation and to the defense of comparative fault; that "losses" recoverable under the Act can include purely economic damages, independent of personal injury or property damage; and that the Act does not create a cause of action for "statutory indemnity." We leave it to the court of appeals to apply the Act's liability provisions, so understood, to the claims involved in this case.

## I.

The Legislature adopted the Underground Facility Damage Prevention and Safety Act in 1993, expressing the intent "to provide a single toll-free telephone number for excavating contractors and the general public to call for notification of their intent to engage in excavation or demolition." Ch. 93-240, §1, Laws of Fla. The function of the newly created notification system would be to "provide the member operators an opportunity to identify and locate their underground facilities." *Id.* One of the Act's express purposes

was to "[a]id the public by preventing injury to persons or property" resulting from excavation accidents that damage underground facilities.  *Id.*

As defined in the Act, the term "underground facility" refers broadly to buried equipment like pipelines, sewers, and cables. § 556.102(13), Fla. Stat. (2019).  A "member operator" is a person or entity that "furnishes or transports materials or services by means of an underground facility."  § 556.102(8), Fla. Stat. (2019).  And an "excavator" is "any person performing excavation or demolition operations."  § 556.102(7), Fla. Stat. (2019).

Initially, the Act made membership in the notification system optional, meaning that some underground facility users would not be "member operators" for purposes of the Act.  *See* ch. 93-240, § 2 Laws of Fla. (defining a "member operator" as "any person who furnishes or transports materials or services by means of an underground facility *and who elects to participate as a member of the one-call notification center*") (emphasis added).  But by 2006, a series of amendments to the Act had made participation in the notification system mandatory for underground facility users.  § 556.102(8), Fla. Stat. (2006).

Along with establishing the notification system, the Act imposes various duties on member operators and excavators. For example, an excavator must use the system to give two days' advance notice before beginning an excavation. § 556.105(1)(a), Fla. Stat. (2019). Then, after receiving notice, a member operator whose underground facility could be affected by the excavation must mark the area involved. § 556.105(5)(a)-(b), Fla. Stat. (2019).

The Act also imposes duties that govern the actual performance of an excavation. For example, in defined instances the Act requires excavators "to use increased caution" and to supervise "[a]ny use of mechanized equipment." § 556.105(5)(c), Fla. Stat. (2019). If underground facility markings are no longer visible, an excavator must stop the excavation and notify the system to have the area re-marked. § 556.105(11), Fla. Stat. (2019). And the Act says that, even after complying with the statutory advance notice requirements, an excavator must "perform[] an excavation or demolition in a careful and prudent manner, based on accepted engineering and construction practices." § 556.106(2)(c), Fla. Stat. (2019).

Finally, certain provisions in the Act address the liability of excavators when there is a damage-causing excavation. This case specifically is about the excavator liability provisions in sections 556.106(2)(a) and (2)(b), which we will later review in detail.

**II.**

The parties in this case are Peoples Gas System (PGS) and Posen Construction, Inc. PGS is a natural gas distributor and member operator. Posen is a road construction company and excavator.

In November 2010, a Posen employee named Mario Santos ruptured a PGS pipeline during an excavation. *Peoples Gas Sys. v. Posen Constr., Inc.*, 323 F. Supp. 3d 1362, 1364 (M.D. Fla. 2018). The accident caused an explosion that left Santos severely injured. *Id.* Although Posen had given advance notice of the excavation, PGS maintained that the notice was deficient under the Act. *Id.* PGS and Posen sued and countersued each other in federal court, eventually settling. *Id.*

Santos (the injured employee) concurrently brought a personal injury lawsuit against both Posen and PGS in state court. Santos alleged in part that PGS had failed to carry out its statutory duty to

mark its facilities within the statutorily prescribed time. *Id.* Santos ultimately dismissed Posen from suit and settled with PGS. *Id.*

After settling with Santos, PGS sued Posen in federal court, claiming that the Act entitled PGS to recover the amount of the settlement payment it had made to Santos. *Id.* The federal district court dismissed PGS's complaint. *Id.* at 1368. The court reasoned that "PGS has failed to state a claim for relief because Posen had no duty to indemnify under the Act." *Id.* at 1366. More specifically, the court concluded that "[w]hile the statute provides liability for bodily injuries, the plain language creates no duty to indemnify a member operator for money it paid during the settlement of a third-party bodily injury claim." *Id.* at 1367.

In PGS's ensuing appeal, the court of appeals recognized PGS's position that it could recover the settlement payment either as damages or as "statutory indemnity" under the Act. *Peoples Gas Sys. v. Posen Constr., Inc.,* 931 F.3d 1337, 1340 (11th Cir. 2019). As to damages, the court of appeals concluded that Florida law does not conclusively establish "whether [the Act] authorizes damages incurred under circumstances as remote as these." *Id.* at 1340. As to indemnity, the court concluded that "the caselaw is not

conclusive and the statute is subject to multiple plausible interpretations, including the one PGS embraces, which caselaw still does not foreclose." *Id.* at 1341.

Given its "substantial doubt" about the "potentially novel" issues in play, the court of appeals decided to certify to us its question about the Act. *Id.* at 1340, 1342.

### III.

We begin with a threshold question identified by the court of appeals: "whether the Act provides a standalone cause of action, or whether it simply clarifies the legal analysis in a negligence claim." *Id.* at 1340. This question arises because the Act does not expressly create a cause of action.

Our precedent says that "whether a cause of action exists when a statute does not expressly provide for one" is primarily a matter of "legislative intent." *Murthy v. N. Sinha Corp.*, 644 So. 2d 983, 985 (Fla. 1994). Any such intent must be gleaned from the text, structure, and purpose of the Act.

We believe that the Act does implicitly create a standalone cause of action. Importantly, the Act goes beyond simply imposing regulations that advance public safety. *See id.* at 986 (finding no

cause of action in a statute that was "created merely to secure the safety and welfare of the public by regulating the construction industry"). Instead, the Act imposes specific duties on member operators and on excavators, and it expressly links violations of those duties to potential civil liabilities. That textual evidence is decisive.

**The Nature of the Cause of Action Created by the Act**

The parties' dispute in this case thus turns on identifying the nature of the cause of action implicitly created by sections 556.106(2)(a) and (2)(b). Those provisions read as follows:

> (2)(a) If a person violates s. 556.105(1) or (6), and subsequently, whether by himself or herself or through the person's employees, contractors, subcontractors, or agents, performs an excavation or demolition that damages an underground facility of a member operator, it is rebuttably presumed that the person was negligent. The person, if found liable, is liable for the total sum of the losses to all member operators involved as those costs are normally computed. Any damage for loss of revenue and loss of use may not exceed $500,000 per affected underground facility, except that revenues lost by a governmental member operator whose revenues are used to support payments on principal and interest on bonds may not be limited.

> (b) If any excavator fails to discharge a duty imposed by this chapter, the excavator, if found liable, is liable for the total sum of the losses to all parties involved as those costs are normally computed. Any damage for

loss of revenue and loss of use may not exceed $500,000 per affected underground facility, except that revenues lost by a governmental member operator whose revenues are used to support payments on principal and interest on bonds may not be limited.

§ 556.106(2)(a)-(b), Fla. Stat. (2019). We will examine these provisions in some detail.

Sections 556.106(2)(a) and (2)(b) share a similar structure. Both use the phrase "losses . . . as those costs are normally computed" to describe the remedy available to injured plaintiffs. And both begin by referring to *two* conditions that must be satisfied to establish entitlement to the provided remedy: the remedy becomes available "if" the defendant violates the Act in a particular way and "if" the defendant is "found liable."

The key phrase "if found liable" appears in both sections 556.106(2)(a) and (2)(b). This raises the question: liable on what basis? We believe that the best reading of the statute is that this phrase refers to liability based on negligence.

That the Act creates a negligence-based cause of action is most evident from the text of section 556.106(2)(a). That section expressly creates a rebuttable presumption of "negligence" when a person violates sections 556.105(1) or (6)—which contain the

statutory advance notice provisions—and subsequently performs a damage-causing excavation. Although section 556.106(2)(b) does not similarly refer to negligence, it uses the same phrase "if found liable." Absent explicit textual evidence pointing in another direction, we see no reason why the basis for liability under the two sections could reasonably be understood to be different.

We also infer negligence-based liability from the subject matter of the Act and from the nature of the duties that the Act imposes. An express purpose of the Act is to "aid the public by preventing injury to persons or property." § 556.101(3)(a), Fla. Stat. (2019). That, of course, is one of the quintessential functions of negligence law. And the Act's overarching standard of care for excavators echoes a common law negligence standard. Section 556.106(2)(c) says that, even after complying with the Act's notice requirements, an excavator is not excused "from performing an excavation or demolition in a careful and prudent manner, based on accepted engineering and construction practices."

Finally, we note that the Act in its original form contained the following provision: "It is not the purpose of this act to create liability for negligence on the part of any operator of an

underground facility who elects not to participate in the one-call notification system created by this act." Ch. 93-240, § 1, Laws of Fla. In our view, this is further evidence that the liability the Act *does* create is best understood as negligence-based liability.

### How Section 556.106(2)(a) Differs from (2)(b)

PGS argues that section 556.106(2)(a) authorizes a claim for money damages and that section 556.106(2)(b) authorizes a separate claim for "statutory indemnity" against excavators.[2] We agree that the two provisions differ from each other, but not in the way that PGS advocates. The two subsections both provide for a negligence-based cause of action for the recovery of damages. The difference between the two subsections is that they address

---

2. In the appellate briefs PGS submitted to this Court, PGS distinguished subsection (2)(a) from (2)(b), arguing that Posen bears "liability for *damages* under Section 556.106(2)(a)" and bears "liability for *indemnification* under Section 556.106(2)(b)." Appellant's Reply Br. at 5, 8 (emphasis added). Notably, PGS did not make this distinction when it brought suit against Posen in federal district court or when it argued its appeal in the Eleventh Circuit. In the first count of PGS's complaint (seeking damages), PGS alleged that Posen breached duties under both sections 556.106(2)(a) and 556.106(2)(b), and PGS alleged entitlement to recovery of damages "pursuant to both sections 556.106(2)(a) and (b)." And in its second count (seeking indemnification), PGS asserted entitlement under "section 556.106," making no claim that subsection (2)(b) in particular was an indemnification provision.

- 11 -

different duties giving rise to potential liability; that only one subsection creates a rebuttable presumption of negligence; and that the subsections protect different classes of potential plaintiffs.

Subsection (2)(a) only addresses situations where a person violates the Act's advance notice provisions and "subsequently . . . performs an excavation or demolition that damages an underground facility of a member operator." § 556.106(2)(a), Fla. Stat. (2019). Subsection (2)(a) says that in such a circumstance, "it is rebuttably presumed that the person was negligent." The potential class of plaintiffs under section 556.106(2)(a) is limited to member operators as defined in the Act.

By contrast, instead of homing in on the Act's advance notice provisions, subsection (2)(b) applies more broadly to situations where "any excavator fails to discharge a duty imposed by this chapter." § 556.106(2)(b), Fla. Stat. (2019). As we have explained, the duties that the Act imposes include the advance notice requirement but also extend to the way an excavation is conducted. Thus, unlike (2)(a), subsection (2)(b) gives member operators a remedy in cases where an excavator complied with the advance notice requirements but nonetheless performed a negligent,

damage-causing excavation. Subsection (2)(b) also protects a broader class of potential plaintiffs. Specifically, it protects "all parties involved" in a damage-causing excavation, not just member operators. This distinction was particularly significant at Act's inception, when not all underground facility users were "member operators" for purposes of the Act.

A key difference between section 556.106(2)(a) and section 556.106(2)(b) is that only the former creates a rebuttable presumption of negligence. It makes sense that the Legislature would have included such a provision as an incentive for underground facility owners to become "member operators" and thereby to gain enhanced protection under the Act.[3]

When it comes to the available remedy, however, sections 556.106(2)(a) and (2)(b) are the same. Both say that the excavator, "if found liable, is liable for the total sum of the losses to [all member operators involved/all parties involved] as those costs are

---

3. As mentioned, the Act was amended to make membership mandatory for underground facility users. However, subsequent amendments to the Act have not changed the substantive terms of liability under sections 556.106(2)(a) or (2)(b). *Compare* ch. 2006-138, Laws of Fla., *and* ch. 2010-100, Laws of Fla., *with* § 556.106(2), Fla. Stat. (2019).

normally computed." § 556.106(2)(a)-(b), Fla. Stat. (2019).  The only difference is in the bracketed text, with subsection (2)(a) referring to "all member operators involved" and subsection (2)(b) referring to "all parties involved."  In each instance, the relevant sentence does nothing more than speak to the damages element of the negligence-based cause of action created by the Act.

### Indemnification Versus Damages

Because the terms "indemnity" and "indemnification" are broad terms, we must be clear about the "statutory indemnification" position that we are rejecting.[4]  PGS's argument is that (1) its settlement payment to Santos was "necessitated by Posen's violation of the Act" and that (2) the settlement payment therefore "constitutes a loss for which PGS is entitled to indemnity under the Act."  PGS does not allege that it was vicariously liable to Santos for Posen's negligence or that the settlement payment covered Posen's liability to Santos.  Nor does PGS dispute that Santos had sued PGS

---

4.  Black's law dictionary defines "indemnity" as "[a] duty to make good any loss, damage, or liability incurred by another." *Black's Law Dictionary* 772 (7th ed. 1999).  It defines "indemnification" as "[t]he action of compensating for loss or damage sustained." *Black's Law Dictionary* 772 (7th ed. 1999).

for its own alleged negligence. Indeed, PGS maintains that the section 556.106(2)(b) "right to indemnification arises even if the utility is also negligent."

As the court of appeals recognized, in making this argument PGS purports to rely on the "plain language" of the Act. *See Peoples Gas Sys.*, 931 F.3d at 1342. PGS emphasizes the text of section 556.106(2)(b) stating that an excavator, "if found liable, is liable for the total sum of the losses to all parties involved as those costs are normally computed," § 556.106(2)(b), Fla. Stat. (2019). As the court of appeals noted, "PGS contends that 'all parties' means that a negligent excavator is liable for losses of anyone involved, and 'total sum' includes any conceivable loss." *Peoples Gas Sys.*, 931 F.3d at 1342.

We cannot agree with PGS's reading of the text. In our view, PGS's argument overlooks the negligence-based liability created by the Act. And that oversight causes PGS to read into the "losses" provision far more than the statutory context allows. As one treatise states, "Natural, proximate, and legal results are all that damages can be recovered for, even under a statute entitling one to recover *any* damage." 3 John Davison Lawson, *Rights, Remedies,*

*and Practice* § 1028 (1890) (*quoted in Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 532 n. 24 (1983)).

The Act does not use any language that one would associate with the creation of a duty like the one urged by PGS. The terms "indemnify" or "indemnification" do not appear in the Act. Nor does the text say anything about making any party (whether member operator, excavator, or anyone else) responsible or vicariously liable for the acts—much less the negligence—of an unrelated party. And the Act says nothing about a member operator being able to recover damages without regard to its own fault, or for its liability to third parties.

A basic rule of textual interpretation is that "statutes will not be interpreted as changing the common law unless they effect the change with clarity." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 318 (2012).[5] Yet the

---

5. *See also Essex Ins. Co. v. Zota*, 985 So. 2d 1036, 1048 (Fla. 2008) ("It is a well-settled rule of Florida statutory construction that '[s]tatutes in derogation of the common law . . . will not be interpreted to displace the common law further than is clearly necessary.' ") (quoting *Carlile v. Game & Fresh Water Fish Comm'n*, 354 So. 2d 362, 364 (Fla. 1977)).

substance of the "statutory indemnity" for which PGS argues is at odds with Florida's common law on indemnification. This Court has explained that "[i]ndemnity rests upon the fault of another which has been imputed to or constructively fastened upon the one seeking indemnity, and there can be no indemnity between joint tortfeasors." *Houdaille Indus., Inc. v. Edwards*, 374 So. 2d 490, 493 (Fla. 1979). Any fault on the part of the plaintiff in a common law indemnity action—"no matter how slight" that fault—precludes the plaintiff's recovery. *Id.* at 494. Given the Act's silence on indemnity, it would not be reasonable to read the Act as having created a new substantive duty so different from this common-law baseline.

Nor does PGS identify any similarly worded statute that has been interpreted to bear the meaning PGS urges for section 556.106(2)(b). The two Florida laws PGS cites—one dealing with off-duty sheriff's deputies and the other with a corporate director's right to seek indemnification from the corporation[6]—have no textual or substantive similarity with the statute here. And, as the

---

6. *See* § 30.2905(2)(a), Fla. Stat. (2011); § 607.0852, Fla. Stat. (2019).

Eleventh Circuit observed, the out-of-state laws that PGS relies on are materially differently worded and therefore inapposite. *See Peoples Gas Sys.*, 323 F.3d at 1341-42.[7]

Finally, we are unpersuaded by the argument that section 556.106(2)(c) supports PGS's position on statutory indemnity. That section says:

> (c) Obtaining information as to the location of an underground facility from the member operator as required by this chapter does not excuse any excavator from performing an excavation or demolition in a careful and prudent manner, based on accepted engineering and construction practices, and it does not excuse the excavator from liability for any damage or injury resulting from any excavation or demolition.

§ 556.106(2)(c), Fla. Stat. (2019). In our view, this provision does nothing more than clarify that an excavator's compliance with the Act's notice provisions does not create a safe harbor from liability. As the text says, the excavator still retains a duty to do its work in a "careful and prudent manner."

---

7. Among other differences, section 40-360.28(B), Arizona Revised Statutes (1999), and section 55-2404, Idaho Code Annotated (1992), refer to "damages to third parties" and "damages to third persons," respectively.

Reading section 556.106(2)(c) *in pari materia* with other sections of the Act shows that this provision does not purport to make an excavator solely liable for all damage or injury resulting from any excavation or demolition, no matter what. Section 556.106(2)(a) expressly indicates that even an excavator that has violated the Act's notice requirements is only *presumed* to have been negligent (and therefore potentially liable) in performing a damage-causing excavation. Section 556.105(13), which makes member operators and excavators responsible for their own costs of complying with the Act, concludes by saying that it "shall not excuse a member operator or excavator from liability for any damage or injury for which it would be responsible under appliable law." And finally, section 556.106(2)(c) on its face says nothing about the relative fault and liability of any other party.

**IV.**

Having established that the Act creates a standalone cause of action sounding in negligence (and not a "statutory indemnification" action along the lines advocated by PGS), we conclude by addressing three discrete issues that may be relevant to the court of

appeals' resolution of this case: proximate causation, comparative fault, and the meaning of the term "loss."

## Proximate Causation

Because the statutory cause of action here sounds in negligence, a defendant cannot be "found liable" unless the defendant's negligence is a proximate cause of the plaintiff's injury and there is no defense to the plaintiff's claim. *See* Restatement (Second) of Torts § 5 (Am. Law Inst. 1965) (explaining these two conditions as necessary for one "subject to liability" to become "liable").[8] And of course it is axiomatic that there can be no recovery "if it is determined that a claimant's negligence was the sole legal cause of her injury." *Standard Havens Prods., Inc. v. Benitez*, 648 So. 2d 1192, 1197 (Fla. 1994); *see also Hoffman v. Jones*, 280 So. 2d 431, 438 (Fla. 1973) ("A plaintiff is barred from

---

8. *See, e.g., Limones v. Sch. Dist. of Lee Cnty.*, 161 So. 3d 384, 389 (Fla. 2015) ("We have long held that to succeed on a claim of negligence, a plaintiff must establish the four elements of duty, breach, proximate causation, and damages."); *Barnett v. State Dep't of Fin. Servs.*, 303 So. 3d 508, 513 (Fla. 2020) ("The elements of a cause of action in tort are: (1) a legal duty owed by defendant to plaintiff, (2) breach of that duty by defendant, (3) injury to plaintiff legally caused by defendant's breach, and (4) damages as a result of that injury.") (quoting *Estate of Rotell v. Kuehnle*, 38 So. 3d 783, 388 (Fla. 2d DCA 2010)).

recovering damages for loss or injury caused by the negligence of another only when the plaintiff's negligence is the sole legal cause of the damage, or the negligence of the plaintiff and some person or persons other than the defendant or defendants was the sole legal cause of the damage.").

Conditioning liability on a determination of proximate causation—as opposed to mere but-for causation—is one of the most basic principles of tort law. "[I]t has always been the practice of common-law courts (and probably of all courts, under all legal systems) to require as a condition of recovery, unless the legislature specifically prescribes otherwise, that the injury have been proximately caused by the offending conduct." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 287 (1992) (Scalia, J., concurring); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014) ("[W]e generally presume that a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute.").

In this case, PGS's claimed damages consist of its settlement payment to Santos (the injured employee). PGS disputes the court of appeals' characterization of this asserted loss as "remote," *see*

*Peoples Gas Sys.*, 931 F.3d at 1339. In support of its argument, PGS asserts that Santos's accident "happened because of Posen," that "Posen's decisions led to the injury and damage that the Act seeks to prevent," and that PGS incurred a loss (the settlement payment to Santos) "because of the injury that Posen caused." It is not clear to us that PGS has overcome the court of appeals' concern about remoteness, or that, as a matter of law, PGS can establish proximate causation under these circumstances.

However, because neither party has directly addressed the issue of proximate causation, and because it is not our role to decide the merits of this case, we will not preempt the court of appeals from applying the principles of proximate causation to PGS's claim.

### Comparative Fault

In this decision we do not purport to address all the defenses that might be applicable to a claim brought under the Act or to the specific claim involved in this case. However, a centerpiece of PGS's arguments is that the Act allows full recovery of its asserted loss without regard to PGS's own negligence. We therefore must clarify that claims brought under the Act—whether under section

556.106(2)(a) or section 556.106(2)(b)—are governed by principles of comparative fault.

Florida's comparative fault statute applies to "negligence action[s]." § 768.81(2), Fla. Stat. (2019). And that statute defines a "negligence action" to include a "civil action for damages based upon a theory of negligence." § 768.81(1)(c), Fla. Stat. (2019). Because the Act authorizes a negligence-based cause of action, we conclude that the comparative fault statute governs claims brought under the Act. *Cf. Jacobs v. Westgate*, 766 So. 2d 1175, 1180 (Fla. 3d DCA 2000) (in which the plaintiff claimed that the defendants violated section 83.67, Florida Statutes (1997), and "the defendants had the burden of proving the defense of comparative negligence").

Beyond the applicability of section 768.81, we deem comparative fault to be among the background principles that inform a reasonable reading of the Act. In 1973, twenty years before the Act came into existence, this Court adopted comparative fault as the common law of our state. *See Hoffman*, 280 So. 2d at 438. In *Hoffman* we said: "In the field of tort law, the most equitable result that can ever be reached by a court is the equation of liability with fault." *Id.*

The principle of comparative fault thus helps to give meaning to the statutory text. Recall that sections 556.106(2)(a) and 556.106(2)(b) say that an excavator, "if found liable, is liable for the total sum of the losses to [all member operators involved/all parties involved] as those costs are normally computed." In our view, the phrase "as those costs are normally computed" is best understood as including an implicit reference to principles of comparative fault. We have said that the doctrine of comparative fault is "designed to *compute* each party's liability based on the damages they *caused* as opposed to the damages they *suffered*." *American Home Assur. Co. v. Nat'l R.R. Passenger Corp.*, 908 So. 2d 459, 468 (Fla. 2005) (first emphasis added). And there would be nothing "normal" about calculating a defendant's liability in a negligence action without regard to the plaintiff's fault.

### Recovery of "Losses"

Finally, we turn to the parties' disagreement over the meaning of the term "losses" as used in sections 556.106(2)(a) and (2)(b). The Act does not include a definition for the term. Posen argues that the term refers only to property damage or lost revenue. PGS responds that "losses" is a broad term and that sections

556.106(2)(a) and (2)(b) do not limit the type of recoverable damages.

On this point we agree with PGS. It appears that the Act uses the term "losses" as a synonym for "damages" and does not categorically exclude the recovery of any particular types of loss.[9] Given the breadth of the term, we do not think it would be reasonable to read "losses" as necessarily precluding a plaintiff's ability to recover economic damages that are independent of personal injury or property damage.

Instead, depending on the specific facts of each particular case, other features of the Act will have the effect of limiting recoverable damages. Such features include the proximate causation requirement, applicable defenses (including comparative fault), the limited class of potential plaintiffs (member operators and "all parties involved"), and the statutory phrase "as those costs are normally computed."

---

9. However, the Act does, with certain identified exceptions, limit the *amount* recoverable on two types of loss: loss of revenue and loss of use. § 556.106(2)(a)-(b), Fla. Stat. (2019).

- 25 -

## V.

For the foregoing reasons, we answer the certified question by concluding: (1) that the Underground Facility Damage Prevention and Safety Act creates a standalone cause of action; (2) that the cause of action sounds in negligence; (3) that liability under the Act is subject to proof of proximate causation and to the defense of comparative fault; (4) that "losses" recoverable under the Act can include purely economic damages, independent of personal injury or property damage; and (5) that the Act does not create a cause of action for "statutory indemnity." We return this case to the United States Court of Appeals for the Eleventh Circuit.

It is so ordered.

CANADY, C.J., and LAWSON and COURIEL, JJ., concur.
POLSTON, J., dissents with an opinion, in which LABARGA, J., concurs.
GROSSHANS, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

POLSTON, J., dissenting.

This case is before the Court for review of the following question of Florida law certified by the United States Court of Appeals for the Eleventh Circuit that is determinative of a cause

- 26 -

pending in that court and for which there appears to be no controlling precedent:

> Whether a member-operator has a cause of action under Fla. Stat. § 5[5]6.106(2)(a)-(c) to recover damages (or obtain indemnification) from an excavator for payments to a third party for personal injuries related to the excavator's alleged violation of the statute?

*Peoples Gas Sys. v. Posen Constr., Inc.*, 931 F.3d 1337, 1342 (11th Cir. 2019). Although not explicitly saying so, the majority answers the certified question in the negative, holding that sections 556.106(2)(a) and 556.106(2)(b) create standalone statutory causes of action that do not provide for the recovery of these damages. For the reasons explained below, I would answer the *narrow*, certified question in the affirmative. I would also conclude that sections 556.106(2)(a) and 556.106(2)(b) create standalone statutory causes of action. But I would conclude that the plain meaning of the statutes broadly providing recovery for "the total sum of the losses" does not limit the recovery of these damages. Further, I would not reach the other issues ruled on by the majority that were neither asked by the Eleventh Circuit nor addressed by the parties.

I respectfully dissent.

- 27 -

# I. BACKGROUND

Peoples Gas System (PGS) sued Posen Construction, Inc. (Posen) in federal district court for damages under the Florida Underground Facility Damage Prevention and Safety Act. *Id.* at 1338. The Eleventh Circuit set forth the pertinent facts as follows:

> PGS is a Florida natural gas distributor that maintains underground pipelines, and Posen is a road construction company. During one of Posen's road construction projects near Ft. Myers, Florida, Posen learned that it would need to have PGS remove a section of gas pipeline ahead of Posen's work. In October 2010, Posen submitted a request to obtain the location of PGS's pipeline. The Act mandates specific procedures and notifications when, in a situation like this, a construction company requires the assistance of an underground utility company.

> PGS alleges the request was unlawful because Posen's request failed to describe the excavation area with the specificity the Act requires. In November 2010, Posen's superintendent, Greg Menuez ("Menuez"), directed his subordinate, Mark Santos ("Santos"), to dig and till the ground around the excavation area with heavy machinery. Importantly, PGS alleges that Menuez knew that a gas pipeline in the area was not properly marked. Santos ruptured the gas pipeline, caused a fire, and was severely injured. Unsurprisingly, years of litigation followed.

> The litigation began in 2011 in Florida state court, when Santos sued PGS and Posen. At some point between the 2011 commencement of the litigation and 2017, Santos dismissed Posen and settled with PGS. Concurrent with the commencement of the Santos litigation, PGS also sued Posen in federal court, seeking damages for the repair costs under a negligence claim.

> Posen counterclaimed, and the parties ultimately settled. The present litigation commenced in January 2018, when PGS sued Posen under the Act, claiming either damages or an alternative claim for indemnity for the money it paid Santos in the earlier settlement.
>
> The Act creates a rebuttable presumption of negligence against the excavator if an excavator "performs an excavation or demolition that damages an underground facility of a member operator." Fla. Stat. § 556.106(2)(a). Under the Act, the excavator is liable "for the total sum of the losses to all parties involved as those costs are normally computed." *Id.* at § 556.106(2)(b). Posen moved to dismiss, claiming that PGS's damages do not qualify as a "loss" under the statute, and because the Act does not provide a statutory right to indemnification. The district court agreed, and on June 26, 2018, it dismissed the complaint.

*Id.* at 1338-39.

The district court concluded "that PGS has failed to state a claim for relief because Posen had no duty to indemnify under the Act." *Peoples Gas Sys. v. Posen Constr., Inc.*, 323 F. Supp. 3d 1362, 1366 (M.D. Fla. 2018). First, the district court concluded that "[a] review of the statutory language shows that a claim for indemnity would not fit the plain meaning of a 'normally computed' 'cost.' Rather, the plain language appears to contemplate costs related to equipment damage or personal injury." *Id.* at 1367 (citation

- 29 -

omitted).[10] The district court explained, "PGS neither claims a personal injury, nor a loss due to damaged equipment. A plain reading of the statute supports no claim for indemnification." *Id.* The district court further explained that "PGS conflates a claim *for* personal injury with an indemnification claim *based* on a personal injury." *Id.* The district court also concluded that "the Act does not include express—or indirect—indemnification language." *Id.* Because of this dispositive ruling on the motion to dismiss, no answer was ever filed by Posen alleging any defenses to the complaint.

On appeal to the Eleventh Circuit, PGS argued "that the district court wrongfully dismissed the action because, in its two-count complaint, only the second count sought indemnity as an alternative claim, while the first count sought direct damages under the Act." *Peoples Gas Sys.*, 931 F.3d at 1339. The Eleventh Circuit concluded that "Florida case law does not conclusively establish the purpose of the Act, including whether it creates a cause of action to

10. The district court only addressed "costs" and "normally computed" in section 556.106(2)(a) and did not address sections 556.106(2)(b) or 556.106(2)(c).

- 30 -

recover damages paid to third parties or simply clarifies a common law negligence claim, and whether it authorizes damages incurred under circumstances as remote as these." *Id.* at 1340. The Eleventh Circuit further concluded that the statutory term "losses" "may or may not include relatively remote indemnity payments to third parties in separate litigation proceedings." *Id.* at 1341. The Eleventh Circuit explained, "We seek clarification from the Florida Supreme Court because the caselaw is not conclusive and the statute is subject to multiple plausible interpretations, including the one PGS embraces, which caselaw still does not foreclose." *Id.*

## II. ANALYSIS

I would answer the certified question in the affirmative and hold that, based on the plain meaning, a member operator has a cause of action under section 556.106(2)(a)-(c) to recover damages or obtain indemnification from an excavator for payments to a third party for personal injuries related to the excavator's alleged violation of the statute.[11]

---

11. The certified question is one of statutory interpretation, which we review de novo. *See Fla. Dep't of Transp. v. Clipper Bay Invs., LLC,* 160 So. 3d 858, 862 (Fla. 2015).

- 31 -

A court's determination of the meaning of a statute begins with the language of the statute. *Lopez v. Hall*, 233 So. 3d 451, 453 (Fla. 2018). If that language is clear, the statute is given its plain meaning, and the court does not "look behind the statute's plain language for legislative intent or resort to rules of statutory construction." *City of Parker v. State*, 992 So. 2d 171, 176 (Fla. 2008) (quoting *Daniels v. Fla. Dep't of Health*, 898 So. 2d 61, 64 (Fla. 2005)). "Even where a court is convinced that the Legislature really meant and intended something not expressed in the phraseology of the act, it will not deem itself authorized to depart from the plain meaning of the language which is free from ambiguity." *Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So. 2d 452, 454 (Fla. 1992) (quoting *Van Pelt v. Hilliard*, 78 So. 693, 694-95 (Fla. 1918)). "[T]he fact that appellate courts may differ with regard to the application of statutory provisions does not necessarily render a statute ambiguous." *Nettles v. State*, 850 So. 2d 487, 495 (Fla. 2003).

Section 556.106, the statute at issue in this case, is found within the Florida Underground Facility Damage Prevention and Safety Act (the Act), which was enacted in 1993. *See* § 556.101(1),

Fla. Stat. (2010); *see also* ch. 93-240, Laws of Fla. The Act was enacted, in part, to "[a]id the public by preventing injury to persons or property and the interruption of services resulting from damage to an underground facility caused by excavation or demolition operations." § 556.101(3)(a). The Act created a not-for-profit corporation, Sunshine State One-Call of Florida, Inc., to act as a clearing center for location of underground construction to avoid damaging those improvements from further excavation. *See* §§ 556.101(2), (3)(b), 556.103, Fla. Stat. (2010). The Act also established a statewide one-call, toll-free notification system for persons to give notice of their intent to excavate to owners of underground facilities in the area to be excavated. *See* § 556.104, Fla. Stat. (2010). The intent of the Legislature was "to provide access for excavating contractors and the public to provide notification to the system of their intent to engage in excavation or demolition." § 556.101(2). Section 556.105, Florida Statutes (2010), sets forth procedures between member operators[12] and

12. A "member operator" is defined as "any person who furnishes or transports materials or services by means of an underground facility." § 556.102(8), Fla. Stat. (2010).

- 33 -

excavators relating to notification and marking of underground

facilities.

## A. Sections 556.106(2)(a) and 556.106(2)(b) are Separate, Standalone Statutory Causes of Action

Section 556.106 provides liability for member operators,

excavators, and for the system.  It also creates, and takes away any

argument for, certain safe harbors for compliance with the Act:

**556.106  Liability of the member operator, excavator, and system.**—

(1)   There is no liability on the part of, and no cause of action of any nature shall arise against, the board members of the corporation in their capacity as administrators of the system.

(2)(a)   If *a person violates s. 556.105(1) or (6),* and subsequently, whether by himself or herself or through the person's employees, contractors, subcontractors, or agents, performs an excavation or demolition that damages an underground facility of a member operator, it is *rebuttably presumed that the person was negligent.* The person, if found liable, *is liable for the total sum of the losses to all member operators* involved as those costs are normally computed.  Any damage for loss of revenue and loss of use may not exceed $500,000 per affected underground facility, except that revenues lost by a governmental member operator whose revenues are used to support payments on principal and interest on bonds may not be limited.

(b)   If *any excavator fails to discharge a duty imposed by this chapter, the excavator, if found liable, is liable for the total sum of the losses to all parties* involved as those costs are normally computed.  Any damage for

loss of revenue and loss of use may not exceed $500,000 per affected underground facility, except that revenues lost by a governmental member operator whose revenues are used to support payments on principal and interest on bonds may not be limited.

(c) *Obtaining information as to the location of an underground facility from the member operator as required by this chapter* does not excuse any excavator from performing an excavation or demolition in a careful and prudent manner, based on accepted engineering and construction practices, and it does not excuse the excavator from liability *for any damage or injury* resulting from any excavation or demolition.

(3) If, after receiving proper notice, a member operator fails to discharge a duty imposed by this act and an underground facility of a member operator is damaged by an excavator who has complied with this act, *as a proximate result of the member operator's failure to discharge such duty*, the excavator is not liable for such damage and the member operator, if found liable, is liable to such person for the total cost of any loss or injury to any person or damage to equipment resulting from the member operator's failure to comply with this act. Any damage for loss of revenue and loss of use shall not exceed $500,000 per affected underground facility, except that revenues lost by a governmental member operator, which revenues are used to support payments on principal and interest on bonds, shall not be limited.

(4) If an owner of an underground facility fails to become a member of the corporation in order to use and participate in the system, as required by this act, and that failure is a cause of damage to that underground facility caused by an excavator who has complied with this act and has exercised reasonable care in the performance of the excavation that has caused damage to the underground facility, the owner has no right of

recovery against the excavator for the damage to that underground facility.

(5) If, after receiving proper notification, the system fails to discharge its duties, resulting in damage to an underground facility, the system, if found liable, shall be liable to all parties, as defined in this act. Any damage for loss of revenue and loss of use shall not exceed $500,000 per affected underground facility, except that revenues lost by a governmental member operator, which revenues are used to support payments on principal and interest on bonds, shall not be limited.

(6) The system does not have a duty to mark or locate underground facilities and may not do so, and a right of recovery does not exist against the system for failing to mark or locate underground facilities. The system is not liable for the failure of a member operator to comply with the requirements of this chapter.

(7) An excavator or a member operator who performs any excavation with hand tools under s. 556.108(4)(c) or (5) is liable for any damage to any operator's underground facilities damaged during such excavation.

(8) Any liability of the state, its agencies, or its subdivisions which arises out of this chapter is subject to the provisions of s. 768.28.

§ 556.106, Fla. Stat. (2010) (emphasis added).

Section 556.106 begins by providing that "[t]here is no liability on the part of, and no cause of action of any nature shall arise against, the board members of the corporation in their capacity as administrators of the system." § 556.106(1). Section 556.106 then

proceeds to outline the liability of the member operator, excavator, and system. *See* § 556.106(2) (imposing liability upon an excavator who violates notice requirements or fails to discharge a duty under the Act); § 556.106(3) (imposing liability upon a member operator who fails to comply with the provisions of the Act); § 556.106(5) (imposing liability upon the system for failure to discharge its duties under the Act).

Section 556.106(2)(a)-(c) are the statutory provisions cited in the certified question. Pursuant to the text, section 556.106(2)(a) creates a rebuttable presumption of negligence where a "person"[13] violates the requisite procedures set forth in section 556.105(1) or (6), and provides that, if found liable, the person will be liable to a member operator "for the total sum of the losses to all member operators," as normally computed and with some specified limitations.

---

13. "Person" is further defined to mean "any individual, firm, joint venture, partnership, corporation, association, municipality, or other political subdivision, governmental unit, department, or agency, and includes any trustee, receiver, assignee, or personal representative of a person." § 556.102(9).

To state the obvious, section 556.106(2)(b) provides a different statutory cause of action than section 556.106(2)(a). Otherwise, there would be no need for it. The scope of whom the provisions pertain to is different: (2)(a) ("a person") and (2)(b) ("any excavator"). What triggers the liability in the provisions is different: (2)(a) ("violates s. 556.105(1) or (6)") and (2)(b) ("fails to discharge a duty imposed by this chapter"). Further, (2)(a) restricts its application to the excavation or demolition, subsequent to the statutory violations, "that damages an underground facility of a member operator." There are no restrictions in (2)(b). Instead, if the excavator is found liable for the statutory violation, it "is liable for the total sum of the losses to all parties involved as those costs are normally computed." And there is no mention of a rebuttable presumption of negligence in (2)(b) as there is in (2)(a). In fact, the word negligence does not appear at all.

Further, the liability in (2)(b) is specific as to an excavator and is greater than (2)(a). The duties under section 556.105(1) and (6), are included within the (2)(b) requirements of discharging its duty imposed by the entire chapter. There are many additional excavator duties required by the Act, including (i) its increased

caution and specified digging methods within a tolerance zone (section 556.105(5)(c)); (ii) verification of the system's positive responses before beginning excavation, and contacting the member operator if the facility is not marked and a positive response has not been received by the system (section 556.105(9)(c)); (iii) stopping excavation or demolition activities if the marking of the horizontal route of any facility is removed or no longer visible, and notifying the system for re-marking or documentation (section 556.105(11)); and (iv) immediately notifying the member operator in specified circumstances and ceasing excavation or demolition activities that may cause further damage to the underground facility (section 556.105(12)).

Sections 556.106(2)(a) and 556.106(2)(b) also establish civil liability of the excavator, *if found liable*, to "all member operators" for violations of the notice procedures and to "all parties involved" for failing to discharge a duty under the Act. The majority downplays the distinction between "all member operators" and "all parties involved." *See* majority op. at 14 ("The only difference is in the bracketed text, with subsection (2)(a) referring to 'all member operators involved' and subsection (2)(b) referring to 'all parties

involved.'  In each instance, the relevant sentence does nothing more than speak to the damages element of the negligence-based cause of action created by the Act.")).  However, this distinction is significant as it broadens the scope of the recovery of damages available under subsection (2)(b).

## B.  The Plain Meaning of the Statutes Providing Recovery for "Total Sum of the Losses" Does Not Limit Recovery of These Damages

Both subsections (2)(a) and (2)(b) provide for the recovery of damages "for the total sum of the losses . . . as those costs are normally computed."  The Act does not define the terms "loss," "losses," "costs," and "normally computed."  Under such circumstances, we must give the statutory language its plain and ordinary meaning.  *See, e.g.*, *State v. Brake*, 796 So. 2d 522, 528 (Fla. 2001) ("[W]here a statute does not specifically define words of common usage, such words are construed in their plain and ordinary sense.").  "In ascertaining the plain meaning of statutory language," this Court has determined that "consulting dictionary definitions is appropriate."  *State v. Weeks*, 202 So. 3d 1, 7 (Fla. 2016).

"Total" is defined as "whole, entire, an entire quantity." *Merriam-Webster's Collegiate Dictionary* 1246 (10th ed. 1994); *see also Black's Law Dictionary* (11th ed. 2019) (defining "total" as "[w]hole; not divided; full; complete"). "Sum" is defined as "the whole amount; aggregate." *Merriam-Webster's Collegiate Dictionary* 1179 (10th ed. 1994); *see also Black's Law Dictionary* (11th ed. 2019) (defining "sum" as "[a] quantity of money"). "Loss" is defined as "a person or thing or an amount lost." *Merriam-Webster's Collegiate Dictionary* 689 (10th ed. 1994); *see also Black's Law Dictionary* (11th ed. 2019) (defining "loss" as "[a]n undesirable outcome of a risk; the disappearance or diminution of value, usu. in an unexpected or relatively unpredictable way"). "Cost" is defined as "the amount of equivalent paid or charged for something." *Merriam-Webster's Collegiate Dictionary* 262 (10th ed. 1994).

Accordingly, given the broad, plain, and ordinary meaning of the words "total," "sum," and "losses," a member operator has a cause of action to recover damages or obtain indemnification from an excavator for payments to a third party for personal injuries related to the excavator's alleged violation of the statute if the excavator is found liable. Given the broad language, the settlement

paid by PGS to Posen's employee as a result of an excavation incident arising out of Posen's alleged violations of the Act would qualify under the plain meaning as the "total sum of the losses" to PGS.

While characterizing this issue as "discrete," the majority states that the definition of "losses" is broad and may include purely economic damages, independent of personal injury or property damage, agreeing with PGS that sections 556.106(2)(a) and 556.106(2)(b) do not limit the type of recoverable damages. *See* majority op. at 20, 25. But the majority ignores this ruling when it answers the certified question in the negative by holding that PGS is unable to recover the payments it made to the employee because indemnification is not recognized by the Act. While sections 556.106(2)(a) and 556.106(2)(b) do not expressly include language referring to indemnity, subsection (2)(b) broadly provides recovery to "all parties involved." The majority distinguishes other out-of-state laws based on their use of the language "damages to third parties" and "damages to third persons," *see* majority op. at 18, while failing to acknowledge the broad scope of "all parties involved" in this case. Santos was an employee of a member operator, involved in the

excavation, and was injured as a result of the excavator's alleged violations of the Act. Accordingly, "all parties involved" would encompass the settlement paid by PGS to Posen's employee as a result of an excavation incident arising out of Posen's alleged violations of the Act.

The majority also rejects PGS's reading of the statute, concluding that PGS reads into the statute "far more than the statutory context allows," and PGS's interpretation would provide for the recovery of "any conceivable loss." *See* majority op. at 15. However, in sections 556.106(2)(a) and 556.106(2)(b), there is no mention of reducing the damages or coming to a "net" recoverable amount. To the contrary, the use of the phrase "total sum of the losses to all parties involved" indicates the whole amount without reduction, and "indemnity" is a recovery from another for a loss suffered because of a third party's or one's own actions. *See Black's Law Dictionary* (11th ed. 2019). Further, the Legislature chose only to include one limitation or exception to the "total sum of the losses" for certain categories of damages: "Any damage for loss of revenue and loss of use may not exceed $500,000 per affected underground facility." § 556.106(2)(a), (2)(b); *see also Facchina v.*

*Mut. Benefits Corp.*, 735 So. 2d 499, 502 (Fla. 4th DCA 1999) ("In crafting new statutory causes of action, the legislature is master of the elements and boundaries on the new cause of action."). If the Legislature had intended that section 556.106(2) contain an additional exception to the "total sum of the losses," it would have explicitly provided for such an exception. *See Cont'l Assur. Co. v. Carroll,* 485 So. 2d 406, 409 (Fla. 1986) ("This Court cannot grant an exception to a statute nor can we construe an unambiguous statute different from its plain meaning.").

Moreover, when read in context, the plain meaning of section 556.106(2)(a)-(b) is consistent with section 556.106(2)(c), which states that "[o]btaining information as to the location of an underground facility from the member operator as required by this chapter does not excuse any excavator from performing an excavation or demolition in a careful and prudent manner, based on accepted engineering and construction practices, and it *does not excuse the excavator from liability for any damage or injury resulting from any excavation* or demolition." § 556.106(2)(c) (emphasis added). Accordingly, subsection (2)(c) makes clear that the excavator is liable for any damage or *injury* resulting from any

- 44 -

excavation. *See Fla. Dep't of Envtl. Prot. v. ContractPoint Fla. Parks, LLC*, 986 So. 2d 1260, 1265 (Fla. 2008) ("A 'statute should be interpreted to give effect to every clause in it, and to accord meaning and harmony to all of its parts' and is not to be read in isolation, but in the context of the entire section." (quoting *Jones v. ETS of New Orleans, Inc.*, 793 So. 2d 912, 914-15 (Fla. 2001))). Although this provision itself takes away an argument for a safe harbor instead of providing a cause of action, it explains the type of damages that are otherwise available from an excavator.

Florida case law construing a different provision of the Act, section 556.106(3), Florida Statutes (2010),[14] which imposes

---

14. Section 556.106(3), Florida Statutes (2010), provides,

> (3) If, after receiving proper notice, a member operator fails to discharge a duty imposed by this act and an underground facility of a member operator is damaged by an excavator who has complied with this act, as a proximate result of the member operator's failure to discharge such duty, the excavator is not liable for such damage and the member operator, if found liable, is liable to such person for the total cost of any loss or injury to any person or damage to equipment resulting from the member operator's failure to comply with this act. Any damage for loss of revenue and loss of use shall not exceed $500,000 per affected underground facility, except that revenues lost by a governmental member

liability upon a member operator who fails to comply with the provisions of the Act, further supports the plain meaning of section 556.106(2). *See Southland Constr., Inc. v. Greater Orlando Aviation*, 860 So. 2d 1031, 1037 (Fla. 5th DCA 2003) ("We agree with Southland that section 556.106(3), Florida Statutes, could be the source of a statutorily created duty owed by Peoples' Gas to Southland to correctly mark the location of its underground facilities and it could be the basis for Southland to recover its own damages if the facilities are not correctly marked and a statutorily specified injury or damage results."); *A & L Underground, Inc. v. City of Port Richey*, 732 So. 2d 480, 481 (Fla. 2d DCA 1999) (concluding an excavator is entitled to recovery of delay and repair costs in an action for violations of section 556.106(3), Florida Statutes (1995), because the language providing for the recovery of "the total cost of any loss" allowed recovery for purely economic losses); *see also* Op. Att'y Gen. Fla. 95-04 (1995) ("[T]he act recognizes that excavators who do not follow the procedures prescribed therein may be found liable for the damages they cause. The manner in which a civil

operator, which revenues are used to support payments on principal and interest on bonds, shall not be limited.

action would be instituted in order to seek such damages would be governed by the Florida Rules of Civil Procedure. It would appear that a civil suit for damages would be brought by the member operators whose underground facilities are damaged due to the excavator's failure to comply with Chapter 556, Florida Statutes.").

## C. *Issues Not in the Certified Question Should Not be Decided*

The majority then reaches the issues of comparative fault and proximate cause that were not yet addressed by the parties or federal courts where the case originated and remains pending. *See Peoples Gas Sys.*, 931 F.3d 1337; *Peoples Gas Sys.*, 323 F. Supp. 3d 1362. The United States District Court for the Middle District of Florida granted a motion to dismiss on narrow legal grounds that were certified by a question from the Eleventh Circuit Court of Appeals and are answered by this opinion. To reach these issues, the majority rules that the statutory causes of action sound in negligence. We should decline to anticipate what additional legal arguments and facts may arise in the federal litigation and decline to address these issues not briefed or argued by the parties and not addressed by the federal courts. *See Savona v. Prudential Ins. Co. of Am.*, 648 So. 2d 705, 707 (Fla. 1995) ("[N]either the federal district

court nor circuit court addressed this issue, and we decline to address it in this proceeding. We have held that we have the authority to consider issues other than those upon which jurisdiction is based, but this authority is discretionary and should be exercised only when those other issues have been properly briefed and argued, and are dispositive of the case.").

First, "comparative negligence," a possible defense not yet raised because of the beginning procedural posture of this case in federal court, should not be addressed. Far from being "a centerpiece" in this case, *see* majority op. at 22, comparative negligence has not been discussed, much less reached by the federal courts, or argued in any brief. The certified question does not ask about any defenses yet to be asserted, and we should decline to address legal issues not yet at issue in the case. *See S. Baptist Hosp. of Fla., Inc. v. Welker*, 908 So. 2d 317, 321 (Fla. 2005) (declining to address an issue not presented in the certified question and not raised by the parties in the trial court, district court, or this Court).

The majority "infers" negligence into section 556.106(2)(b) as a basis for the application of the comparative fault defense. For

example, the majority erroneously reasons that because subsection (2)(a) sounds in negligence, (2)(b) also sounds in negligence. And because of the negligence-based cause of action, the comparative fault statute would apply. However, this is premature, and we should not make this determination. The majority rules that subsection (2)(a) sounds in negligence because it explicitly provides for a rebuttable presumption of negligence. However, the majority then "infers" negligence into subsection (2)(b) to conclude that "[t]he two subsections both provide for a negligence-based cause of action for the recovery of damages." *See* majority op. at 7, 11. But, arguably, these inferences are unreasonable. *See* majority op. at 9-11. The use of the same language "if found liable" does not make the two subsections the same when the scope of whom they pertain to and what is required are different. Further, the Legislature can impose its own statutory requirements and liability that flows to "[a]id the public by preventing injury to persons or property" without requiring negligence. § 556.101(3)(a). It may provide a statutory scheme with its own cause of action and remedies, as it has done here. In section 556.106(2)(c), the Legislature notes that an excavator's compliance does not excuse it from performing its

work in a "careful and prudent manner, based on accepted engineering and construction practices." As the majority states, these are common law negligence standards, but they are simply used to eliminate any safe harbor argument that the excavators might make in a separate negligence action outside the scope of these statutes. They do not support an inference that the statutes themselves sound in negligence. The same applies to the original provision in the Act that eliminated any claim for negligence by an operator who chose not to participate.

A statutory cause of action, as the name implies, is a cause of action derived directly from a statute, and it is the statute that defines what elements must be satisfied. Instead of using the plain language, the majority rewrites (2)(b) as follows by adding the underlined terms:

> If any excavator fails to discharge a duty imposed by this chapter, the excavator, if found liable of negligence, is liable for the total sum of the losses, as a proximate result of the excavator's failure to discharge such duty, to all parties involved as those costs are normally computed. Any damage for loss of revenue and loss of use may not exceed $500,000 per affected underground facility, except that revenues lost by a governmental member operator whose revenues are used to support payments on principal and interest on bonds may not be

> limited.  <u>Any liability by an excavator which arises herein is subject to the provisions of s. 768.81.</u>

"[A] court cannot construe an unambiguous statute in a way which would extend, modify, or limit its express terms or its reasonable and obvious implications."  *Casais v. State*, 204 So. 3d 969, 970 (Fla. 5th DCA 2016) (quoting *Jefferson v. State*, 927 So. 3d 1037, 1039 (Fla. 4th DCA 2006) (Reyes, J., concurring)).

Further, even if both subsections (2)(a) and (2)(b) sound in negligence, both subsections also contain the language providing recovery "for the total sum of the losses."  An argument could be made that the use of this express language does not provide for a reduction based on comparative negligence, which reduces the damages awarded.  *See generally* Fla. Std. Jury Instrs. (Civ.) app. B, Form 1, Model Form of Verdict for General Negligence with Apportionment of Fault ("If you find that (claimant)(decedent) or (identify additional person(s) or entit(y)(ies) [was][were] negligent [or at fault], the court in entering judgment will make an appropriate reduction in the damages awarded.").  "Total sum of the losses" means the whole amount without reduction, and there is no

mention of reducing the damages or coming to a recoverable amount "net" of comparative negligence.

Likewise, we should not inject "proximate causation" into the statutory causes of action when it has not been argued by the parties and considered by the federal courts. In section 556.106(3), the language "proximate result" is explicitly used but does not appear in sections 556.106(2)(a) or 556.106(2)(b). An argument could be made that the exclusion of the "proximate result" in (2)(a) and (2)(b) was intentional by the Legislature and we should apply the plain meaning of the statute and apply proximate cause only when the Legislature says so. The parties should have an opportunity to make these arguments and allow the federal courts to consider them.

### III. CONCLUSION

For the above reasons, I would answer the certified question in the affirmative and hold that, based on the plain meaning of the Act, a member operator has a cause of action under section 556.106(2)(a)-(c) to recover damages or obtain indemnification from an excavator for payments to a third party for personal injuries related to the excavator's alleged violation of the statute. I would

limit the decision to the narrow question presented and not address any legal or factual defenses that may be raised to the statutory claim.

I respectfully dissent.

LABARGA, J., concurs.

Certified Question of Law from the United States Court of Appeals for the Eleventh Circuit – Case No. 18-13291

Julissa Rodriguez, Miami, Florida, Jason Gonzalez, Daniel E. Nordby, and Amber Stoner Nunnally of Shutts & Bowen LLP, Tallahassee, Florida; and V. Stephen Cohen, Pedro F. Bajo, Jr., and James C. Mooney of Bajo Cuva Cohen & Turkel, P.A., Tampa, Florida,

   for Appellant

Hinda Klein of Conroy Simberg, Hollywood, Florida,

   for Appellee

Frank A. Shepherd of Gray Robinson, P.A., Miami, Florida; and William W. Large of Florida Justice Reform Institute, Tallahassee, Florida,

   for Amicus Curiae Florida Justice Reform Institute